IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARL G. LINDSEY,

    Petitioner,

v.

MARGARET BRADSHAW, Warden,

    Respondent.

Case No. 1:03cv702
JUDGE SARGUS
Magistrate Judge Abel

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon petitioner's motion for discovery, (doc. no. 44), respondent's memorandum in opposition, (doc. no. 46), and petitioner's reply, (doc. no. 47).

### I. Introduction

Petitioner seeks to conduct discovery regarding his second, fifth and eighth grounds for relief. Specifically, petitioner alleges that the State withheld material evidence with which he could have impeached the State's chief witness, Kathy Kerr, and that his trial attorneys were ineffective during both the culpability and mitigation phases of his trial. Petitioner now seeks to conduct depositions of his trial counsel, his defense investigator, the Brown County Prosecuting Attorney and his investigator, as well as certain Brown County Sheriff's employees. Petitioner also seeks access to all notes and files concerning his case that are in the possession of the defense investigator.

Respondent has agreed to many of the discovery requests made by petitioner but opposes the discovery requests set forth in petitioner's motion. Respondent argues that petitioner has failed to establish good cause for the discovery that he requests and that the requested discovery will not yield any new information regarding petitioner's claims.

## II. Facts

The Supreme Court of Ohio summarized the facts supporting petitioner Lindsey's conviction for aggravated murder as follows:

> In the early morning hours of February 10, 1997, appellant, Carl Lindsey, was at Slammers Bar near Mt. Orab along with Kathy Kerr, Kenny Swinford, A.J. Cox, and Joy Hoop, one of the bar owners. According to the testimony at trial, Joy had wanted her husband, Donald Ray "Whitey" Hoop, dead, and that night appellant told her "he would do him in." Joy then handed a small gun to appellant, and appellant left the bar. Kathy Kerr also decided to leave the bar at that point, but heard a banging noise. As she left she saw Whitey lying on the ground, covered with blood, and appellant standing by the door. According to investigators, Whitey had been shot once in the face while seated inside his vehicle. He apparently then left his vehicle and remained in the parking lot where he was shot again in the forehead. Upon seeing Whitey on the ground, Kerr immediately left for her home, which was only a few hundred feet away. Appellant followed her in his pickup truck, and she allowed him into her trailer to take a shower.
> At approximately the same time that these events were occurring, Brown County Deputy Sheriff Buddy Moore was on patrol and passed Slammers Bar. He noticed and was suspicious of a pickup truck in the parking lot and followed it from the bar south to the Kerr residence. A couple minutes later, he received a police dispatch that a shooting had been reported at Slammers and headed back toward the bar. On the way, Moore noticed a car pass him at a high speed going south. When he arrived at Slammers, he found Whitey Hoop's body lying in the parking lot. When backup arrived, Moore instructed a state trooper to go to Kerr's trailer, look for the pickup, and make sure that no one left the premises. Moore also left for Kerr's trailer.
> When Moore arrived at the Kerr residence, he found appellant in the bathroom, soaking his clothes in a tub full of red-tinted water. He also found a box of .22 caliber ammunition on the sink. At that point, Moore took appellant into custody. Upon a search of the premises, police seized from the Kerr trailer

appellant's wallet, the ammunition, the clothing in the tub, and a .22 caliber Jennings semiautomatic pistol, which they discovered behind the bathroom door. They also found and seized Whitey's wallet, which was in a wastebasket in the bathroom. When discovered, Whitey's wallet was empty, although an acquaintance of Whitey's testified that Whitey habitually carried about $1,000 with him. Police also found $1,257 in appellant's wallet, although he had been laid off in late December 1996.

The crime laboratory tested the bloodstains on the items seized by police and found the stains on appellant's jacket, jeans, boot, truck console, steering-wheel cover, driver's seat, driver's-side door, and door handle all to be consistent with Whitey's blood. One of the stains on the Jennings .22 pistol was also consistent with Whitey's blood.

Appellant was indicted on two counts of aggravated murder, one under R.C. 2903.01(A) (prior calculation and design) and one under R.C. 2903.01(B) (felony-murder), each count carrying a death specification for felony-murder (R.C. 2929.04[A][7] ) and the first count also carrying a specification for murder for hire (R.C. 2929.03[A][2] ). He was also indicted on one theft count and two aggravated robbery counts. At the close of the evidence, the trial court granted appellant's Crim.R. 29 motion for judgment of acquittal on the murder-for-hire specification. A jury then found appellant guilty on all counts and all remaining specifications and, after a penalty hearing, recommended death. The trial judge merged the two aggravated murder counts and imposed the death sentence.

*State v. Lindsey*, 87 Ohio State 3d 479, 479-80 (2000).

In his post-conviction petition, petitioner alleged claims both that he was denied the effective assistance of trial counsel and that the prosecutor concealed material evidence and suborned perjury. He requested leave to pursue discovery to more fully develop the factual basis for the constitutional violations that entitled him to relief; and he requested an evidentiary hearing pursuant to O.R.C. § 2953.21 after discovery was conducted. On September 28, 1998, petitioner filed a motion for leave of court to conduct discovery. In the alternative, he requested an order requiring disclosure of specific enumerated items, including a copy of the Brown County Sheriff's file assembled in conjunction with the death of Donald Hoop. He sought leave to depose Brown County Prosecutor Thomas Grennan, the Brown County Sheriff and any and all subordinates who had dealings with Kathy Kerr between January 1, 1997 and September 21,

3

1998, the Records Custodian for the Brown County Sheriff, and his trial attorneys, Bruce Wallace and Scott Gusweiler. On January 15, 2002, all of these requests were denied by the Brown County Court of Common Pleas in an order denying the postconviction petition. Petitioner timely appealed the denial of his petition to the Ohio Twelfth Appellate District Court of Appeals. On February 24, 2003, the Court of Appeals affirmed the trial Court's denial of postconviction relief. On July 2, 2003, the Supreme Court of Ohio denied petitioner's motion for leave to appeal.

### III. Standard of Review

The discovery processes contained in the Federal Rules of Civil Procedure do not apply across the board in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that

4

he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

The purpose of the proposed discovery is to obtain evidence that petitioner could offer at an evidentiary hearing in this Court to support his claims that the prosecutor committed *Brady* violations and that his trial attorneys denied him the effective assistance of counsel. The availability of an evidentiary hearing is controlled by 28 U.S.C. § 2254(e), which provides, in relevant part:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was presently unavailable; or,
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

In *Williams v. Taylor*, 529 U.S. 420, 431 (2000), the United States Supreme Court held that the first question was whether the factual basis for a claim was developed in state court. If not, the court must determine whether the petitioner "failed to develop the factual basis of [his] claim" within the meaning of § 2254(e)(2). *Id.* 529 U.S. at 432. A petitioner has "failed to develop" the factual basis for his claim only when "there is a lack of diligence or some greater fault" attributable to him or his attorney. *Id.* The test is not whether the facts were developed in the state court postconviction proceeding but whether the petitioner was diligent in his efforts to discover the facts supporting his claim. *Id.* at 435.

5

III. Discussion

A. Exculpatory Evidence

In his second claim for relief, petitioner alleges that the State withheld material impeachment evidence and suborned perjured testimony in violation of his due process rights. Specifically, petitioner argues that the State granted testimonial immunity to Kathy Kerr, a key witness for the State, and failed to disclose that grant of immunity during petitioner's trial. Petitioner alleges that despite several motions and requests by defense counsel that the State turn over all exculpatory evidence, this information was not revealed until the trial of petitioner's co-defendant, several months after petitioner was convicted and sentenced to death. Petitioner also alleges that the State failed to disclose to defense counsel that it had paid for Kerr's hotel room during petitioner's trial. Petitioner now seeks additional information relevant to his claim that the State withheld material evidence that prevented the jury in his case from fully assessing the credibility and veracity of Kathy Kerr as she testified regarding the night that Donald Hoop was killed. Petitioner argues that access to the prosecutor and the individuals investigating the case on behalf of the State is necessary in order for him to further develop the factual basis of his *Brady* claim.

In connection with these allegations, petitioner seeks the production of documents and the deposition of several individuals. First, petitioner seeks to depose Thomas Grennan, the Brown County Prosecuting Attorney, and Robert Gifford, investigator for the Brown County Prosecutor's Office, regarding conversations, interviews, interrogations, and any other written or oral communications with Kathy Kerr, as well as the purported grant of immunity and promise to pay for Kerr's hotel room during petitioner's trial. Next, petitioner seeks to depose Deputy

Buddy Moore, Detective John Fetters, and Detective Forest Coburn, all of the Brown County Sheriff's Office, regarding their respective roles in the investigation into the death of Donald Hoop, as well as their conversations, interviews, interrogations and any other written or oral communications with Kathy Kerr. Finally, petitioner requests a deposition of the records custodian of the Brown County Sheriff's Office concerning the location of any and all files containing information regarding the investigation into the death of Donald Hoop.

In order to determine whether petitioner is entitled to conduct discovery on this claim, the Court initially must identify the essential elements of this claim. *See Bracy*, 520 U.S. at 904. The rule in *Brady* requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). In *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court went on to hold that the *Brady* rule includes evidence that might impeach the credibility of state witnesses. Materiality is determined by asking "whether the *Brady* violation undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998), *cert. denied*, 528 U.S. 842 (1999). Petitioner need not prove these elements; rather, he must show that if the facts are developed through the discovery he seeks, he could prove a *Brady* violation and would be entitled to relief. *See Harris, supra*, 394 U.S. at 299.

Respondent argues that petitioner has failed to show how the documents provided to him by respondent in discovery give rise to a need for the depositions he seeks. She further argues that the overwhelming physical and circumstantial evidence pointing to Lindsey as the killer of Whitey Hoop demonstrates that the proposed discovery will not establish a constitutional

7

violation.

In the instant matter, the Court is satisfied that petitioner has demonstrated that he diligently sought to develop the factual basis for his claims in the Ohio courts and that there is good cause for his request to take depositions. The discovery sought by petitioner relates to the specific allegations of *Brady* violations raised in his Petition. Petitioner's requests are narrowly focused on the circumstances surrounding the testimony of Kathy Kerr and his opportunity to conduct an adequate cross-examination of her. The Court finds that such depositions are necessary in order for petitioner to conduct an adequate inquiry into the circumstances surrounding the purported grant of immunity, the offer to pay for accommodations, and the withholding of that information by the State. The Court will not pre-judge whether the evidence obtained through the proposed discovery will ultimately support petitioner's constitutional claims. He has made a sufficient showing of a constitutional violation to entitle him to the discovery requested.

Petitioner also seeks access to all case files in the possession of the Brown County Sheriff's Office pertaining to its investigation into the death of Donald Hoop. With respect to this request, petitioner acknowledges that respondent has agreed to provide these law enforcement files but has been unable to locate them. Accordingly, petitioner seeks to depose the records custodian of the Brown County Sheriff's Office concerning the whereabouts of any such files. For good cause shown, petitioner is entitled to depose the records custodian.

B. Ineffective Assistance of Counsel

Petitioner seeks to conduct discovery on the allegations of ineffective assistance of trial counsel set forth in his fifth and eighth grounds for relief. In his fifth ground for relief, petitioner argues that his attorneys performed unreasonably and to his prejudice during the culpability phase of his trial. Petitioner argues that his trial counsel waived the opportunity to question and rehabilitate potential jurors who voiced opposition to the death penalty, failed to conduct any cross-examination of A.J. Cox, a critical State's witness whom the trial court specifically found to have given prior inconsistent statements, and failed to adequately cross-examine the coroner regarding his qualifications or lack thereof. (*Amended Petition*, doc. no 38, at pp. 8-12).

In his eighth ground for relief, petitioner argues that his attorneys performed unreasonably and to his prejudice by failing to present effective mitigation evidence during the sentencing phase of his trial. Petitioner argues that his counsel presented only four mitigation witnesses and that no psychological, toxicological, substance abuse, or cultural mitigation evidence was presented. Petitioner also argues that counsel failed to conduct a proper mitigation investigation. Specifically, petitioner claims that trial counsel made the following errors:

A. Failed to find and present effective evidence of petitioner's extensive history of drug and alcohol abuse.

B. Failed to find and present effective evidence from family and friends regarding physical, emotional, and sexual abuse.

C. Failed to find and present effective evidence from a toxicologist.

D. Failed to find and present effective evidence from a cultural mitigation specialist.

E. Failed to engage and utilize an effective mitigation specialist to prepare for mitigation.

(*Petition*, doc. no. 9, at ¶¶ 148-185, except paragraphs 171-176). Petitioner asserts that several

9

witnesses who were willing to testify on his behalf were never contacted by defense counsel or the mitigation investigator.

Petitioner seeks to depose his trial attorneys, Bruce Wallace and Scott Gusweiler, as well as James Crates, the defense mitigation investigator. Petitioner also seeks to issue a *subpoena duces tecum* to Mr. Crates for production of all case files, documents, and notes in his possession pertaining to petitioner's case. Petitioner asserts that although he has access to his trial file, that file lacks any documentation pertaining to the mitigation investigation, including notes of witnesses interviewed, records requested and/or reviewed, notes of witness preparation or notes of any discussions or consultations with experts. Furthermore, petitioner contends that James Crates has been unresponsive to petitioner's repeated requests to have access to the documents, notes and files maintained by Mr. Crates in connection with his mitigation investigation. Petitioner believes that reviewing these files and questioning defense counsel and Mr. Crates about the scope of the mitigation investigation, the preparation of the mitigation case, and the strategies and tactics employed by trial counsel during both the culpability and sentencing phases may lead petitioner to additional evidence supporting his claims of ineffective assistance of counsel. (Doc. no. 44, at pp.13-14).

In order to determine whether petitioner is entitled to conduct discovery on his ineffective assistance of counsel claims, the Court must identify the essential elements of such claims. *Bracy*, 520 U.S. at 904. The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the

10

>  defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the Court determine that petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697. Again, petitioner need not prove these elements; rather, he must show that if the facts are developed through the discovery he seeks, he could prove a *Strickland* violation and would be entitled to relief. *See Harris, supra*, 394 U.S. at 299.

Inherent in counsel's responsibilities is the duty to investigate. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland, supra*, 466 U.S. at 691; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994)(failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992)(reasonable investigation was lacking, so counsel's performance was deficient). The importance of competent representation during the penalty phase of a capital trial cannot be

11

understated, especially with respect to the duty to investigate, since, as a practical matter, all that stands between a defendant who has been convicted of a capital specification and death is whatever mitigation evidence he or she can muster. *Mapes v. Coyle*, 171 F.3d 408, 426 (6th Cir. 1999).

> [C]ertainly, trial counsel must commit a serious error to be judged unconstitutionally ineffective. However, when a client faces the prospect of being put to death unless counsel obtains and presents something in mitigation, minimal standards require some investigation.

*Id.*

In determining whether a particular act or omission on the part of counsel was outside the wide range of professional norms, this Court must accord a high measure of deference to counsel's decisions. *Strickland*, 466 U.S. at 681; *see also White v. McAninch*, 235 F.3d 988, 994-95 (6th Cir. 2000). Of course, a "strategic" or "tactical" decision is not automatically insulated from review, if it does not appear that the decision was supported by sufficient investigation.

> The determination as to whether counsel's trial strategy amounts to ineffective assistance of counsel should be made with respect to the thoroughness of the pretrial investigation that counsel conducted. The more thorough the investigation, the more deference the trial strategy receives, while strategic decisions made after incomplete investigation receive less....

*White v. McAninch*, 235 F.3d at 995-96 (citing *Strickland*, 466 U.S. at 690-91). *See also Wiggins v. Smith, supra*, 123 S.Ct. at 2535.

In determining whether petitioner can satisfy the "good cause" standard for conducting discovery, it stands to reason that the Court must also take into account the findings of the state courts regarding the issues on which petitioner seeks to conduct discovery. To satisfy the "good cause" standard for discovery, petitioner must demonstrate that the facts, if more fully

12

developed, would entitle him to relief. Under the standard of review set forth in 28 U.S.C. §2254(d), petitioner would not be entitled to relief on his trial counsel ineffectiveness claims unless it appears that the state courts' rulings were contrary to or involved an unreasonable application of Supreme Court precedent, or that the state courts' factual findings were unreasonable based on the evidence presented.

In an attempt to demonstrate good cause for his discovery requests, petitioner argues that there exist important and relevant questions for trial counsel about the work performed, decisions made, and counsel's qualifications and experience to handle capital cases. Respondent argues that petitioner raised these ineffective assistance of trial counsel claims on direct appeal and/or the postconviction proceedings, and the Supreme Court of Ohio made a detailed analysis of them. It concluded that his trial attorneys were in the best position to determine trial strategy.

Upon careful review, this Court is persuaded that petitioner has demonstrated good cause to conduct discovery on his claims of ineffective assistance of trial counsel. Initially, the Court notes that the record contains no affidavits or post-trial testimony from trial counsel about their actions and omissions during trial. Information about counsel's decisions, actions, and omissions is uniquely in the possession of counsel and not typically available from any other source besides counsel. Although some of the ineffective assistance of trial counsel claims were raised on direct appeal, petitioner's argument is that facts not of record support his claims. He attempted to obtain discovery on them in the postconviction action, but his requests for discovery were denied. Thus, petitioner is entitled to depose trial attorneys Bruce Wallace and Scott Gusweiler, as well as defense investigator, James Crates. Petitioner is also entitled to issue a *subpoena duces tecum* to Mr. Crates for production of all case files, documents, and notes in

his possession pertaining to petitioner's case.

### III. Conclusion

For the foregoing reasons, the Court GRANTS petitioner's motion for discovery. The Court finds that petitioner has satisfied the good cause standard set forth in Habeas Corpus Rule 6 to conduct the following discovery:

1. Petitioner is entitled to depose Thomas Grennan, the Brown County Prosecuting Attorney, and Robert Gifford, investigator for the Brown County Prosecutor's Office, regarding conversations, interviews, interrogations, and any other written or oral communications with Kathy Kerr, as well as the purported grant of immunity and promise to pay for Kerr's hotel room during petitioner's trial;

2. Petitioner is entitled to depose Deputy Buddy Moore, Detective John Fetters, and Detective Forest Coburn regarding their respective roles in the investigation into the death of Donald Hoop as well as their conversations, interviews, interrogations and any other written or oral communications with Kathy Kerr;

3. Petitioner is entitled to depose the records custodian of the Brown County Sheriff's Office concerning the location of any and all files containing information regarding the investigation into the death of Donald Hoop; and

4. Petitioner is entitled to depose trial attorneys Bruce Wallace and Scott Gusweiler as well as defense investigator James Crates, and petitioner is entitled to issue a *subpoena duces tecum* to Mr. Crates for the production of all case files, documents, notes and the like in his possession pertaining to petitioner's case.

Although the Court finds that discovery is warranted in this case, the Court will not permit prolonged, unlimited discovery. Because the discovery requests granted by this Court will consist only of the gathering of records and a few depositions, petitioner is granted three (3) months from the date of this Order to conduct the discovery set forth in this order.

**IT IS SO ORDERED.**

            3-29-2006
**EDMUND A. SARGUS, JR.**
**United States District Judge**