IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CARL LINDSEY,

        Petitioner,

    v.

WARDEN, Chillicothe Correctional
  Institution

        Respondent.

**Case No. 1:03-cv-702**
**Judge Sarah D. Morrison**
**Magistrate Judge Elizabeth P. Deavers**

<u>**OPINION AND ORDER**</u>

     Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this

Court a habeas corpus action pursuant to 28 U.S.C. § 2254.   This matter is before the Court

upon the habeas Petition (ECF No. 9), the Amended Petition (ECF No. 38), the Return of Writ

(ECF No. 12), the Traverse (ECF No. 20), and the Third Amended Petition, setting forth lethal

injection claims.   This matter is also before the Court on Petitioner's Notice of Withdrawal of

Grounds for Relief (ECF No. 63), Petitioner's Final Merit Brief (ECF No. 75), Respondent's

Merit Brief (ECF No. 80), and Petitioner's Reply (ECF No. 81).   This Court has thoroughly

reviewed all the remaining claims in this habeas action, and upon said review, finds Petitioner's

claims lack merit.   Habeas relief is **DENIED** and this action is **DISMISSED**.

        **I.**     **Factual Background and Procedural History**

     After a trial by jury in Brown County, Ohio, Petitioner Carl Lindsey was convicted of

Aggravated Murder and sentenced to death for the February 10, 1997, murder of Donald Ray

"Whitey" Hoop.   On direct review, the Ohio Supreme Court set forth the facts and procedural

history of this case:

In the early morning hours of February 10, 1997, appellant, Carl Lindsey, was at Slammers Bar near Mt. Orab along with Kathy Kerr, Kenny Swinford, A.J. Cox, and Joy Hoop, one of the bar owners. According to the testimony at trial, Joy had wanted her husband, Donald Ray "Whitey" Hoop, dead, and that night appellant told her "he would do him in." Joy then handed a small gun to appellant, and appellant left the bar. Kathy Kerr also decided to leave the bar at that point, but heard a banging noise. As she left she saw Whitey lying on the ground, covered with blood, and appellant standing by the door. According to investigators, Whitey had been shot once in the face while seated inside his vehicle. He apparently then left his vehicle and remained in the parking lot where he was shot again in the forehead. Upon seeing Whitey on the ground, Kerr immediately left for her home, which was only a few hundred feet away. Appellant followed her in his pickup truck, and she allowed him into her trailer to take a shower.

At approximately the same time that these events were occurring, Brown County Deputy Sheriff Buddy Moore was on patrol and passed Slammers Bar. He noticed and was suspicious of a pickup truck in the parking lot and followed it from the bar south to the Kerr residence. A couple minutes later, he received a police dispatch that a shooting had been reported at Slammers and headed back toward the bar. On the way, Moore noticed a car pass him at a high speed going south. When he arrived at Slammers, he found Whitey Hoop's body lying in the parking lot. When backup arrived, Moore instructed a state trooper to go to Kerr's trailer, look for the pickup, and make sure that no one left the premises. Moore also left for Kerr's trailer.

When Moore arrived at the Kerr residence, he found appellant in the bathroom, soaking his clothes in a tub full of red-tinted water. He also found a box of .22 caliber ammunition on the sink. At that point, Moore took appellant into custody. Upon a search of the premises, police seized from the Kerr trailer appellant's wallet, the ammunition, the clothing in the tub, and a .22 caliber Jennings semiautomatic pistol, which they discovered behind the bathroom door. They also found and seized Whitey's wallet, which was in a wastebasket in the bathroom. When discovered, Whitey's wallet was empty, although an acquaintance of Whitey's testified that Whitey habitually carried about $1,000 with him. Police also found $1,257 in appellant's wallet, although he had been laid off in late December 1996.

The crime laboratory tested the bloodstains on the items seized by police and found the stains on appellant's jacket, jeans, boot, truck console, steering-wheel cover, driver's seat, driver's-side door, and door handle all to be consistent with Whitey's blood. One of the stains on the Jennings .22 pistol was also consistent with Whitey's blood.

2

> Appellant was indicted on two counts of aggravated murder, one under R.C. 2903.01(A) (prior calculation and design) and one under R.C. 2903.01(B) (felony–murder), each count carrying a death specification for felony–murder (R.C. 2929.04(A)(7)) and the first count also carrying a specification for murder for hire (R.C. 2929.03(A)(2)). He was also indicted on one theft count and two aggravated robbery counts. At the close of the evidence, the trial court granted appellant's Crim.R. 29 motion for judgment of acquittal on the murder-for-hire specification. A jury then found appellant guilty on all counts and all remaining specifications and, after a penalty hearing, recommended death. The trial judge merged the two aggravated murder counts and imposed the death sentence.

*State v. Lindsey*, 87 Ohio St.3d 479, 721 N.E.2d 995 (2000). Joy Hoop, who was tried in a separate and subsequent proceeding, was convicted of two counts of complicity in the commission of the aggravated murder, and was sentenced to a term of life in prison with parole eligibility after serving twenty-five years. *State v. Hoop*, No. CA2000-11-034, 2001 WL 877296, *1 (Ohio App. 12th Dist. Aug. 6, 2011).

After the Ohio Supreme Court affirmed Petitioner's convictions and sentence on direct review, the United States Supreme Court denied Petitioner's Petition for a Writ of Certiorari. *Lindsey v. Ohio*, 531 U.S. 838 (2000). Petitioner filed his original petition for post-conviction relief on September 21, 1998, and an amended petition on April 3, 1999. The trial court denied the post-conviction petition on January 15, 2002, without a hearing. (Appx., ECF No. 152-10, at PAGEID # 8674-8690.) The Twelfth District Court of Appeals affirmed the decision of the trial court and denied post-conviction relief. *State v. Lindsey*, No. CA2002-02-002, 2003 WL 433941 (Ohio App. 12th Dist. Feb. 24, 2003).

On April 30, 1999, Petitioner filed a motion for a new trial in the state trial court, based on a new witness who testified at Joy Hoop's trial that Hoop confessed to firing the second and fatal shot that killed Whitey Hoop. The trial court denied the motion for a new trial on July 15, 2003, and the Twelfth District Court of Appeals affirmed. *State v. Lindsey*, No. CA2003-07-

3

010, 2004 WL 1877734 (Ohio App. 12th Dist. Aug. 23, 2004).

On October 10, 2003, after exhausting his state court remedies, Petitioner filed the instant Petition for a Writ of Habeas Corpus, raising ten claims for relief.   (Petition, ECF No. 9.) On January 13, 2005, Petitioner filed an Amended Petition, removing all references to actual innocence, and abandoning all but sub-part (C) of his First Claim for Relief.   (Am. Petition, ECF No. 38.)   Additionally, on September 7, 2006, Petitioner filed a Notice of Withdrawal of Grounds for Relief from Habeas Petition, voluntarily withdrawing the claims of ineffective assistance of counsel set forth in his Fifth and Eighth Claims for Relief.   (ECF No. 63.) Accordingly, eight claims for relief remain pending before the Court; subpart (C) of Petitioner's First Claim for Relief, and Claims Two, Three, Four, Six, Seven, Nine and Ten remain before the Court for a decision on the merits.

As an additional matter, the Court notes that Petitioner has made several attempts to amend his petition to add claims for relief challenging Ohio's lethal injection protocol.   Those proposed claims have been the subject of years of litigation in this Court and will be addressed in the final section of this Opinion and Order.

## II.      Standards of Review

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective prior to the filing of the instant petition, apply to this case.   *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).   The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding.   Specifically, the AEDPA directs this Court not to grant a writ unless the state court adjudication "resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), "[a] state court's adjudication of a claim is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.'" *Stojetz v. Ishee*, 892 F.3d 175, 192-93 (6th Cir. 2018) (quoting *Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014)). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id.* (citing *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007)). A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001). Rather, for purposes of 2254(d)(1), "clearly established federal law includes only the holdings of the Supreme Court, excluding any dicta; and, an application of these holdings is 'unreasonable' only if the petitioner shows that the state court's ruling 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded

disagreement.'"  *Stojetz*, 892 F.3d at 192-193 (quoting *White v. Woodall*, 572 U.S. 415 (2014)).

*See Shinn v. Kayer*, ___ S.Ct ___, 2020 WL 7327827, *3 (U.S. Dec. 14, 2020) ("The prisoner

must show that the state court's decision is so obviously wrong that its error lies 'beyond any

possibility for fair-minded disagreement.'") (quoting *Harrington v. Richter*, 562 U.S. 86, 103

(2011)).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas

relief on a claim that the state courts adjudicated on the merits unless the state court adjudication

of the claim "resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In

this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be

correct and a petitioner bears the burden of rebutting the presumption of correctness by clear and

convincing evidence.  The Sixth Circuit recently remarked on the hurdles a petitioner must

overcome regarding a state court's factual findings:

> To prove that a state court's factual assessment was 'unreasonable,' a petitioner
> must show that 'a reasonable factfinder must' disagree with the state court's
> assessment."  *Woods v. Smith*, 660 F. App'x 414, 424 (6th Cir 2016) (quoting *Rice
> v. Collins*, 546 U.S. 333, 341, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).  Meeting
> this standard requires Pollini to do more than show an alternative way to view the
> facts.  *Franklin v. Bradshaw*, 695 F.3d 439, 447-48 (6th Cir. 2012) ("[A] state-
> court factual determination is not unreasonable merely because the federal habeas
> court would have reached a different conclusion in the first instance.") (quoting
> *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

*Pollini v. Robey*, 981F.3d 486, 497 (6th Cir. 2020).  Lastly, this Court's review is limited to the

record that was before the state court that adjudicated the claim on the merits.  *Cullen v.*

*Pinholster*, 563 U.S. 170 (2011).

A state prisoner who seeks a writ of habeas corpus in federal court does not have an

automatic right to appeal a district court's adverse decision unless the court issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). When a claim has been denied on the merits, a COA may be issued only if the petitioner has made a substantial showing of the denial of a constitutional right. To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Recently, the Sixth Circuit vacated a COA and dismissed an appeal, on the basis that a district court did not appropriately apply the correct standard for granting a COA. *Moody v. United States*, 958 F.3d 485 (6th Cir. 2020). In *Moody*, the Sixth Circuit cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect," and "[t]o put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*." *Id*. at 488 (emphasis in original). With respect to a claim that a state court has previously rejected on the merits pursuant to 28 U.S.C. § 2254(d), the Sixth Circuit advised "[f]or that claim to warrant appeal, there must be a substantial argument that the state court's decision was not just wrong but *objectively unreasonable* under the stringent requirements of § 2254(d) (commonly known as 'AEDPA' deference)." *Id*. (emphasis in original).

Keeping these standards of review in mind, the Court has carefully reviewed the Petition, the Amended Petition (as it relates to Petitioner's First Claim for Relief), the state court record, the decisions of the state courts, and the merits briefing of the parties. For the reasons that follow, the Court finds Petitioner is not entitled to relief in this habeas corpus action.

7

### III.   Petitioner's Claims

### First Claim for Relief:

> The evidence used to support Lindsey's convictions and sentences
> is insufficient.

In subpart C of his First Claim for Relief, as amended, Petitioner argues the evidence of his guilt was legally insufficient to support his convictions and sentence, and the state court findings to the contrary are unreasonable.   (ECF No. 38, at PAGEID # 511.)   Specifically, Petitioner contends this "was a case of circumstantial evidence, with questionable testimony by incredible witnesses with unclear and undisclosed motives," and the State of Ohio "cannot, and did not, submit the degree of proof that is sufficient to uphold Lindsey's aggravated murder conviction and death sentence."   (*Id*. at PAGEID # 516.)   The crux of Petitioner's argument is that the State's case hinged on the "patently incredible witness" Kathy Kerr, and "no reasonable juror would have found Lindsey guilty based upon the ever-changing statements of a woman who had unexplained blood on her hands after the murder of Whitey Hoop."   (*Id*. at PAGEID # 512.)   Initially, Petitioner asserted a claim of actual innocence as part of his First Claim for Relief, but he withdrew that assertion in his Amended Petition, wherein he stated he was amending his first claim "by removing paragraphs 24-38 and any reference to actual innocence." (*Id*. at PAGEID # 511.)

Petitioner raised his insufficient evidence claim on direct appeal, and Respondent does not allege the claim is barred by procedural default.   The Ohio Supreme Court decided this claim in conjunction with its discussion of whether the verdicts were against the manifest weight of the evidence, holding:

B.   Sufficiency of the Evidence

8

Appellant argues in his fourteenth proposition that the evidence presented at trial was legally insufficient to support his conviction of aggravated murder. The relevant question in determining the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Emphasis deleted.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573.

Appellant insists that the state failed to prove that he acted with purpose to kill under R.C. 2903.01. Viewing the evidence in the light most favorable to the prosecution, we are convinced that it is sufficient to support that element of the offense. Witnesses testified that after Joy said she wanted Whitey dead, appellant said he would "take care of it" or "do him in." Furthermore, Whitey was shot twice in the head at close range, the second time while he was lying on the ground. As we have repeatedly held, multiple gunshots to a vital area at close range tend to demonstrate purpose to kill. *See State v. Palmer* (1997), 80 Ohio St.3d 543, 562, 687 N.E.2d 685, 702; *State v. Otte* (1996), 74 Ohio St.3d 555, 564, 660 N.E.2d 711, 720. This evidence, taken together, is sufficient to demonstrate appellant's purpose to murder Whitey Hoop.

We similarly reject appellant's second argument, that the state failed to prove appellant's identity as the murderer. Appellant was heard to say he would do Whitey in and was caught right after the shooting in Kerr's bathroom soaking his bloodstained clothes in her tub. Police also discovered in the bathroom Whitey's wallet and a Jennings .22 with a bloodstain on it consistent with Whitey's blood. Lindsey's clothing and truck were also heavily stained with blood consistent with Whitey's blood. Viewing this evidence in a light most favorable to the prosecution, we are convinced that any rational trier of fact could have found beyond a reasonable doubt that appellant committed the aggravated murder. Appellant's fourteenth proposition of law is overruled.

C. Manifest Weight

Appellant's fifteenth proposition of law challenges his conviction for aggravated murder as against the manifest weight of the evidence. In considering a manifest-weight claim, "'[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,

485 N.E.2d 717, 720–721.

Appellant contends that circumstantial evidence pointed to suspects other than himself and that such evidence outweighed the state's evidence as to appellant's identity. In particular, appellant focuses upon Deputy Sheriff Moore's supposed testimony that an unidentified vehicle was seen leaving the parking lot of Slammers at high speed. In fact, Moore testified only that a vehicle was seen driving at a high speed past him as he returned to the bar, not that it left from Slammers. Appellant also points to the fact that Swinford claimed he left the bar before the shooting but that no one saw him drive away and that no gunshot residue tests were taken from Swinford. Finally he emphasizes that Kathy Kerr was seen to have blood on her but that police failed to sample it.

This evidence by itself is weak and cannot be said to implicate any of the above as the murderer. Moreover, considered in the context of the remaining identity evidence, this case most definitely does not fall into the category of the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins, supra,* 78 Ohio St.3d at 387, 678 N.E.2d at 547. Rather, the evidence shows that appellant stated he would kill Whitey, that he was seen standing near his dead body, that police found him shortly after the shooting soaking his bloodstained clothing in a bathroom that also contained Whitey's wallet and the same type of gun that killed Whitey, and that his truck was heavily stained with blood consistent with Whitey's. This evidence persuades us that the jury neither lost its way nor created a manifest miscarriage of justice in convicting appellant of aggravated murder. Appellant's fifteenth proposition of law is overruled.

*State v. Lindsey*, 87 Ohio St. 3d 479, 482-84 (2000).

An insufficient evidence claim, as opposed to a freestanding claim of actual innocence, states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990) (*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

> testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319.   The *Jackson* standard "'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'"   *Thompson v. Skipper*, 981 F.3d 476, 479 (6th Cir. 2020) (quoting *Jackson*, 443 U.S. at 324).

In a case such as this, filed after the enactment of the AEDPA, two levels of deference to state court decisions is required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would.   First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).   In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.   *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993).   Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.   See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).   Thus, on habeas review of a sufficiency of the evidence claim, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as required by the AEDPA.   *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*).   Stated another way:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.   First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what

11

conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*) (internal citation omitted). *See also Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (noting in light of *Jackson* and AEDPA's two layers of deference, "a federal court's review of a state court conviction for sufficiency of the evidence is very limited"). In applying the deference that is due, the AEDPA "requires a habeas court to review the actual grounds on which the state court relied." *Thompson*, 981 F.3d at 480 (citing *Wilson v. Sellers*, 584 U.S. ___, 138 S.Ct. 1188, 1191-92 (2018)).

Here, in rejecting Petitioner's sufficiency of the evidence claim on the merits, the Ohio Supreme Court correctly identified *Jackson v. Virginia* as the correct constitutional standard. Accordingly, no basis for habeas relief exists unless the Ohio Supreme Court's decision involved an unreasonable application of *Jackson*, and even then, that application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Thompson*, 981 F.3d at 479 (quoting *Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020)). Petitioner has not cleared this hurdle. In applying *Jackson*, the Ohio Supreme Court cited specific evidence of record from which a reasonable jury could infer that Petitioner acted with the requisite purpose to kill Whitey Hoop. As to his purpose, the Ohio Supreme Court noted that on the night of the murder, and in response to Joy Hoop saying she wanted her husband dead, Petitioner stated he would "take care of it" or "do him in." *Lindsey*, 97 Ohio St. 3d at 483. Shortly thereafter, Petitioner was seen

12

standing near Whitey Hoop's body. As to Petitioner's intent to kill, Whitey Hoop was shot

twice at close range, with both shots to the vital head/face area of his body. Additional evidence

strongly implicated Petitioner as the murderer. Law enforcement observed Petitioner's truck

leaving the scene of the murder. Petitioner was found a short time later in a nearby residence

soaking bloodstained clothes in a bathroom, where the victim's wallet and a gun consistent with

the murder weapon were also found. As the Ohio Supreme Court noted, the gun had "a

bloodstain on it consistent with Whitey's blood" and "Lindsey's clothing and truck were also

heavily stained with blood consistent with Whitey's blood." *Id*. The facts recited by the Ohio

Supreme Court are sufficient to support Petitioner's convictions, and Petitioner has not

established that the state court's decision was contrary to or an objectively unreasonable

application of clearly established federal law. Petitioner's First Claim for Relief is without

merit.

Further, the Court finds that reasonable jurists would not find the resolution of

Petitioner's sufficiency of the evidence claim to be debatable or wrong. The Court declines to

issue a certificate of appealability.

**Second Claim for Relief:**

The State of Ohio withheld material exculpatory evidence of witness immunity in
violation of Mr. Lindsey's due process rights and allowed perjured testimony at Mr.
Lindsey's trial. U.S. CONST. AMENDS. V, VI, XIV.

In his Second Claim for Relief, Petitioner argues the prosecution suppressed material,

exculpatory evidence of purported witness immunity and other compensation. (Petition, ECF

No. 9-1, at PAGEID # 167.) Specifically, Petitioner claims the state failed to disclose that it had

granted key witness Kathy Kerr testimonial immunity and compensated her for her testimony, in

13

the form of lost wages and a hotel room during the pendency of Petitioner's trial. Petitioner

further contends the prosecutor suborned perjury by failing to correct Kerr when she testified that

she would "do her time" for testifying falsely before the Grand Jury. (*Id.* at PAGEID # 169.)

Respondent acknowledges that Petitioner presented this claim to the state courts during his post-

conviction proceedings and the claim is properly before this Court on habeas review.

On appeal from the denial of his petition for post-conviction relief, the Twelfth District

Court of Appeals disposed of Petitioner's claim regarding Kerr's testimony in two short

paragraphs:

> In appellant's first, second and sixth grounds for relief he argued that "Kerr
> was induced to testify against [appellant] with a purported grant of testimonial
> immunity," a state-paid hotel room, and reimbursement of her lost wages during
> the trial. As a result, appellant argues the prosecutor engaged in misconduct by
> concealing the impeachment evidence that [he] could have used to reveal the bias
> of the state's witness.
>
> However, the state did not grant, or attempt to grant any immunity to
> witness Kerr. See R.C. 2945.44. Kerr's belief that she would be reimbursed for
> lost wages has not been established as fact, and in any event, would not arise to the
> level of prosecutorial misconduct. Furthermore, providing a hotel room to Kerr
> would not be potential impeachment evidence of such magnitude or significance as
> to provide postconviction relief. Therefore, appellant has alleged no operative
> facts to indicate that the state concealed impeachment evidence relating to Kerr
> from the defense.

*State v. Lindsey*, No. CA2002-02-002, 2003 WL 433941, *5-6 (Ohio App. 12th Dist. Feb. 24,

2003).

In his merit brief in support of the instant habeas petition, Petitioner sets forth two

reasons why this Court should question the decision of the Twelfth District Court of Appeals, the

last state court to issue a decision on this matter. First, Petitioner argues the decision by the

court of appeals "summarily rejected" his claims regarding Kerr, "without any citation to, or

discussion of, clearly established federal law on failure to disclose material evidence and

suborned perjury."   (ECF No. 75, at PAGEID # 1111.)   Secondly, Petitioner contends the state

court made incorrect and unreasonable findings of fact by concluding that immunity was not

offered to Kerr.   According to Petitioner:

> Astonishingly, when presented with Lindsey's <u>Brady</u> and suborned perjury claims,
> the Ohio[] appellate court made the determination that the state did not grant or
> attempt to grant any immunity to witness Kerr. The state appellate court ended any
> analysis of the issue presumptively because once they found there was no
> immunity, there was an implicit finding that the prosecutor did not fail to disclose
> evidence and that there was no perjury by Kerr. Clearly, the Ohio court of appeals'
> finding on this fact was incorrect and was unreasonable.   (internal citation
> omitted).

(*Id.*)

This Court must first decide the appropriate level of deference due to the state appellate

court's decision.   The Court has reviewed Petitioner's petition for post-conviction relief, his

second amended petition for post-conviction relief, and the accompanying exhibits.   (Appx.,

ECF No. 152-8, at PAGEID # 7127; ECF 152-10, at PAGEID # 8544.)   Petitioner raised his

claims regarding the purported grant of immunity to witness Kerr as his first and second grounds

for relief.   Petitioner argued:

> The State, through the prosecuting attorney, has a duty to disclose to the defense all
> evidence favorable to the accused and material to either guilt or punishment.   Ohio
> R. Crim. P. 16; <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Kyles v. Whitley</u>, 514 U.S.
> 419 (1995); <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); <u>Giglio v. United States</u>, 405
> U.S. 150 (1972).   The State breached its duty and violated Mr. Lindsey's
> constitutional rights by concealing evidence that Kathy Kerr had been induced to
> testify by a purported grant of immunity and other valuable consideration, thereby
> depriving Mr. Lindsey his rights to a fair trial and due process of law and
> undermining his right to confront the State's witnesses.   U.S. Const. amends. V,
> VI, XIV; Ohio Const., art. §§ 19, 10, 16.

(Appx., ECF No. 152-10, at PAGEID # 8564.)   There is no question that Petitioner presented

the essence of a federal constitutional *Brady* claim to the state courts.   In so doing, Petitioner

cited applicable United States Supreme Court precedent and principles. The Twelfth District Court of Appeals, on the other hand, did not seemingly address Petitioner's constitutional claim. The appellate court (and the trial court for that matter), analyzed whether the prosecutor had granted (or could grant) Kerr enforceable transactional immunity under the Ohio immunity statute, set forth as Section 2945.44 of the Ohio Revised Code. Applying only Ohio law, the court of appeals determined the prosecutor had not granted Kerr transactional immunity, something only a court could do. The state court did not address the potential impeachment value of Kerr believing she had immunity, or whether the prosecutor made promises to her regarding any future prosecution arising out of her testimony. By ending the inquiry upon the finding of no official grant of transactional immunity, the state courts bypassed consideration of the substance of Petitioner's *Brady* claim. The state courts did not acknowledge Petitioner included a federal *Brady* claim, nor did they rely on federal law or use language suggesting the materiality of this potential impeachment evidence was considered. Given these circumstances, this Court concludes the Twelfth District Court of Appeals did not address the federal claim Petitioner Lindsey raised post-conviction.

If a state court does not rule on a federal claim before it, federal review of that claim is *de novo* rather than deferential. *Hawkins v. Coyle*, 547 F.3d 540, 546 (6th Cir. 2008) (noting when a prisoner "'properly raised a claim in state court, yet that court did not review the claim's merits, AEDPA deference does not apply, and the federal habeas court reviews legal issues *de novo*'") (quoting *Vazquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007)); *Matthews v. Ishee*, 486 F.3d 883 (6th Cir. 2007) (finding where state court denied *Brady* claim exclusively on state law grounds the claim was "fairly presented but not reviewed on the merits by a state court" and thus

"we review the claim *de novo*"); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (stating when there are "no results, let alone reasoning, to which this court can defer . . ., any attempt to determine whether the state court decision was contrary to, or involved an unreasonable application of clearly established Federal law . . . would be futile").   Thus, this Court addresses Petitioner's *Brady* claim regarding the Kerr impeachment material *de novo*.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the State has a duty to disclose exculpatory evidence to the defense under the Due Process Clause.   "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).   With regard to the first element, "the Supreme Court has held that the duty to turn over favorable evidence encompasses impeachment evidence as well as exculpatory evidence."   *Eakes v. Sexton*, 592 F. App'x. 422, 427 (6th Cir. 2014) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).   Evidence is material only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed.   *LaMar v. Houk*, 798 F.3d 405, 415 (6th Cir. 2015).   A violation is established by showing that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."   *VanHook v. Bobby,* 661 F.3d 264, 267 (6th Cir. 2011) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "The materiality of *Brady* evidence depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced by the state."   *Eakes*, 592 F. App'x at 427 (citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)).   That is, the materiality

17

analysis necessarily involves weighing the value of the undisclosed evidence against other evidence produced by the state.   *Chinn v. Warden*, 3:02cv512, 2020 WL 2781522, *11 (S.D. Ohio May 29, 2020) (citing *Bethel v. Bobby*, 2:10-CV-391, 2018 WL 1516778, at *2 (S.D. Ohio Mar. 28, 2018) (report and recommendation)).   "Where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material."   *United States v. Ramer*, 883 F.3d 659, 672 (6th Cir. 2018) (quoting *Bales v. Bell*, 788 F.3d 568, 574 (6th Cir. 2015)).

The crux of Petitioner's *Brady* claim is that the state made and failed to disclose an agreement with witness Kathy Kerr that she would be granted testimonial immunity regarding her testimony at his trial.   Respondent argues the state courts correctly determined the prosecutor did not legally grant or attempt to grant official immunity to Kerr.   According to Respondent, under Ohio law, only a court may grant immunity upon a written request by the prosecuting attorney.   (ECF No. 80, at PAGEID # 1159) (citing *State v. Tammerino*, No. L-82-345, 1983 Ohio App. Lexis 14904 (6th Dist. Aug. 26, 1983) ("It is important to note that police officers and prosecuting attorneys cannot grant immunity.   A grant of immunity must be approved by a judge and must also meet the requirements set forth in R.C. 2945.44.")). Respondent acknowledges that police officers or prosecutors do sometimes promise immunity without first obtaining judicial approval, and in those circumstances, "there is a risk that the statements obtained from the individual are involuntary and inadmissible at trial." *Id*. Respondent notes "the potential harm to the State in eliciting testimony under a false promise of immunity would not have raised itself in Petitioner or his co-conspirators' trials, but would have

18

become an issue if Kerr had been criminally charged." *Id.* What Respondent does not recognize is that a purported yet unenforceable grant of immunity to Kerr could also be an issue in Petitioner's case, if it was not disclosed to Petitioner. If Kerr believed she was being offered some form of immunity in exchange for her testimony, this fact should have been disclosed to Petitioner's counsel.

Here, a reasonable view of the state court record indicates a strong likelihood that the prosecutor offered Kathy Kerr testimonial immunity. This offer was memorialized in a letter dated July 8, 1997, approximately two months before Petitioner's September, 1997 trial. The letter, attached to Petitioner's post-conviction petition as Exhibit 45B, appears to bear the signature of the prosecuting attorney, Thomas Grennan, and states as follows:

> Re: Grant of Testimonial Immunity
> Dear Ms. Kerr:
>     This is to advise you that I, as the Brown County Prosecutor, am hereby granting you testimonial immunity for your truthful testimony and cooperation in the prosecution in the matter of State of Ohio v. Carl Lindsey and State of Ohio vs. Joy Hoop, which resulted in the homicide death of Donald Ray Hoop on February 10, 1997.

(PC Exh. 45B, ECF No. 152-9, at PAGEID # 8122.) Petitioner's trial counsel, Bruce Wallace, swore an Affidavit attesting that he was not made aware of this grant of testimonial immunity prior to the trial. (PC Exh. 13, ECF No. 152-8, at PAGEID # 7529.) In the State's Response to Petitioner's post-conviction petition, the State characterized the issue as follows:

> The State of Ohio did not grant Kathy Kerr immunity from prosecution in exchange for her testimony. The Prosecutor granted Ms. Kerr testimonial immunity. In other words the State would not use anything Ms. Kerr said against her should she be charged with committing a crime.

(ECF No. 152-10, at PAGEID # 8639.)

It is well settled that *Brady* contemplates the disclosure of impeachment information,

including any consideration given for a witness's testimony. The Sixth Circuit has noted:

> The extent to which the rule of *Brady* requires disclosure not just of evidence of formal cooperation agreements, but also evidence of informal communications between the prosecution and a witness, has received significant attention in recent Sixth Circuit case law. In *Bell v. Bell,* the court noted that "[i]t is well established that an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under *Brady.*" 512 F.3d at 233. However, "[t]he existence of a less formal, unwritten or tacit agreement is also subject to *Brady*'s disclosure mandate." *Id.* (citing *Wisehart v. Davis,* 408 F.3d 321, 323-24 (7th Cir. 2005)). "*Brady* is not limited to formal plea bargains, immunity deals or other notarized commitments. It applies to 'less formal, unwritten, or tacit agreement[s],' so long as the prosecution offers the witness a benefit in exchange for his cooperation, ... so long in other words as the evidence is 'favorable to the accused.' " *Harris v. Lafler,* 553 F.3d 1028, 1034 (6th Cir. 2009) (quoting *Bell,* 512 F.3d at 233, and *Bagley,* 473 U.S. at 678).
>
> Yet, the mere fact that a witness desires or expects favorable treatment in return for his testimony is insufficient; there must be some assurance or promise from the prosecution that gives rise to a *mutual* understanding or tacit agreement.

*Akrawi v. Booker*, 572 F.3d 252, 262-63 (6th Cir. 2009). Although the existence of an informal, or implicit agreement should be disclosed, the failure to do so, without more, is not enough to merit relief. A State's violation of its *Brady* duty of disclosure warrants habeas relief only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-34.

Petitioner has satisfied the first two prongs of the *Brady* inquiry by establishing there was an agreement regarding testimonial immunity, the agreement was likely not disclosed to the defense, and that agreement could have been used for impeachment purposes. Petitioner, however, cannot prevail on his *Brady* claim, because he has not established that the evidence was material to the outcome of his trial. Accordingly, this Court cannot conclude Petitioner was prejudiced by the prosecution's conduct in omitting this information. Petitioner's trial counsel subjected witness Kerr to lengthy cross-examination at trial, establishing her history of making

conflicting and untruthful statements to both the investigators and the Grand Jury, as well as her lack of forthrightness. (ECF No. 153-4, at PAGEID # 11330-11348.) There is no reason to believe that disclosure of this additional impeachment evidence would have so altered the jury's assessment of Kerr's credibility as to give rise to a reasonable probability that the outcome of the trial would have been different. Accordingly, the Court finds the undisclosed evidence is "cumulative, and hence not material." *Ramer*, 883 F.3d at 672. *See also Akrawi*, 572 F.3d at 264 (finding that defense counsel's cross examination might have been "*more effective* if evidence if the mutual understanding had been disclosed prior to trial, but only incrementally so") (emphasis in original). It is also important to note that based on the letter from the prosecutor, attached as an exhibit to the post-conviction petition, the prosecutor offered only testimonial immunity to Kerr, not immunity for any involvement in the crime. This appears to have been a limited agreement by the prosecutor not to use Kerr's testimony against her in any subsequent proceedings.

As to Petitioner's argument that the state agreed to pay Kerr for her lost wages, Petitioner has not pointed to evidence of record to support this allegation. "Unsupported assumptions and unfounded speculation" are insufficient to support a *Brady* claim on habeas review. *Hill v. Mitchell*, 842 F.3d 910, 933 (6th Cir. 2016). *See also Brown v. Boyd*, 3:20-CV-00241, 2020 WL 6566012, at *18 (M.D. Tenn. Nov. 9, 2020) ("Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim.") (quoting *Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)). This portion of Petitioner's claim also lacks merit, as it is bereft of substance and evidentiary support. Likewise, the Court does not view the fact that the State may have facilitated Kerr's testimony by providing a hotel room during the trial to be

21

compelling impeachment material.   In a death penalty prosecution, the State may choose to

secure accommodations for a witness for any number of reasons, including security concerns.

Moreover, "[i]n determining whether 'withheld information was material and therefore

prejudicial,' a reviewing court considers "it in light of the evidence available for trial that

supports the petitioner's conviction.'"   *See Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir.

2011) (quoting *Jells v. Mitchell*, 538 F.3d 478, 502 (6th Cir. 2008); *Towns v. Smith*, 395 F.3d

215, 260 (6th Cir. 2005) (same).   Here, there was other evidence of Petitioner's guilt.   A. J. Cox

testified that he saw Joy Hoop with a gun, and heard Petitioner Lindsey say "I'll take care of it."

(Trial Tr. at 727-728, 733; ECF No. 153-4, at PAGEID # 11836-11837, 11841.)   Shortly before

receiving the call about the murder, Brown County Sherriff's Deputy Buddy Moore, on routine

patrol, observed Petitioner's truck leave the parking lot of Slammer's Bar.   The truck was

discovered a short time later at Kathy Kerr's residence, next to the bar.   Petitioner was

discovered inside this residence, in Kerr's bathroom, soaking his bloodstained clothes.   (Trial

Tr. 70-79, 530-536; ECF No. 153-4, at PAGEID # 11175-11184, 1638-11644.)   A pistol was

found behind the bathroom door and Whitey Hoop's wallet was found in the bathroom trashcan.

(Trial Tr. 702-712; ECF No. 153-4, at PAGEID # 11810-11820.).   Petitioner's truck was

examined, and blood consistent with the victim's was found on the door handle and leather

steering wheel cover.   Swabs of Petitioner's hands indicated the presence of gun shot residue.

(Trial Tr. 430-431; ECF No. 153-4, at PAGEID # 430-431.)   In sum, Petitioner cannot establish

cognizable prejudice sufficient to support his *Brady* claim, even on *de novo* review.

Finally, Petitioner claims the prosecutor suborned perjury by not correcting Kerr when

she stated on cross-examination that she would do her time for testifying falsely before the

22

Grand Jury.  (ECF No. 153-4, at PAGEID # 11334.)  To prevail on a false-testimony claim in habeas corpus, Petitioner must show "(1) that the prosecution presented false testimony (2) that the prosecution knew was false, and (3) that was material."  *Akrawi v. Booker*, 572 F.3d 252, 265 (6th Cir. 2009) (citing *Abdus-Samad v. Bell*, 420 F.3d 614, 625 (6th Cir. 2005)).  *See also Burnside v. Rewerts*, No. 19-2074, 2020 WL 5592695, *1 (6th Cir. Apr. 29, 2020) (citing *Akrawi*).  "The subject statement must be 'indisputably false' rather than 'merely misleading.'" *Akrawi*, 572 F.3d at 265 (quoting *Abdus-Samad*, 420 F.3d at 625).  Petitioner has not satisfied this standard.  The statement of Kerr was not indisputably false, as Petitioner has produced no evidence of any agreement exempting Kerr from prosecution for perjury.

To warrant a COA, a petitioner must make a substantial showing that he was denied a constitutional right.  28 U.S.C. § 2253(c)(2*); see also Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy 28 U.S.C. § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Court is cognizant of this "gatekeeping process for federal habeas appeals," *Moody v. U.S.*, 958 F.3d 485, 488 (6th Cir. 2020), and declines to issue a COA as to this claim.  Reasonable jurists would not find debatable or wrong this Court's resolution of Petitioner's *Brady* claim.

### Third Claim for Relief:

The Prosecution used inconsistent theories of prosecution to procure convictions of Mr. Lindsey and Joy Hoop, violating Mr. Lindsey's right to fundamental fairness and due process.  U.S. CONST. AM. V, VI, VIII, XIV.

23

      A.     Two trials, two theories
      B.     Manipulated evidence at Mr. Lindsey's trial
      C.     New witness at Joy Hoop's trial

In his Third Claim for Relief, Petitioner challenges the State of Ohio's use of inconsistent theories regarding who fired the fatal shot that killed Whitey Hoop, in the separate prosecutions of Petitioner and co-defendant, Joy Hoop.   Specifically, at Hoop's subsequent trial, the State presented a new witness, Thomas Merriman, an acquaintance of Petitioner Lindsey.   Merriman testified that Joy Hoop told him Lindsey "didn't finish the job and she had to go out and shoot [Whitey] a second time in the head."   (ECF No. 152-9, at PAGEID # 7714-7745.)

Petitioner argues the use of factually contradictory theories violates the principles of due process, as well as the Eighth Amendment.   (Petition, ECF No. 9-1, at PAGEID # 172.)

According to Petitioner:

> The following theories were consistent at both Mr. Lindsey's and his codefendant's trials:  (1) Joy Hoop enlisted Mr. Lindsey to kill her husband when he came to Slammer's bar to pick her up; (2) Whitey Hoop was shot twice in the bar parking lot, with some time passing between the first and second shot; (3) of the two gunshot wounds sustained by the victim, only the second one to his forehead was fatal; (4) the victim was in his vehicle when he sustained the first shot in his cheek; (5) the victim exited his vehicle and ambulated around the parking lot for some period of time; (6) the victim was flat on his back near the bar wall when the second shot was fired at point blank range.  (Tr. T.p. 29-41, 813-820; P.C. Exh. 32 at 1047-1082).
>
> But the critical inconsistency was who fired the fatal shot.  (Tr. T.p. 31, 834; P.C. Exh. 32 at 1076).   Mr. Lindsey allegedly fired the fatal shot at his trial, but at Joy Hoop's trial she was allegedly the principal offender.

(*Id*. at PAGEID # 171.)   Petitioner also claims there was a discrepancy or "manipulation" of Kathy Kerr's testimony between the two trials, regarding whether Kerr heard any additional shots as she ran home after seeing Petitioner next to Whitey Hoop's body.   (*Id*. at PAGEID # 173.)

24

Petitioner presented this inconsistent theories claim to the state courts in both his post-conviction proceedings and in a motion for a new trial. In connection with the post-conviction proceedings, the trial court rejected Petitioner's claim, making lengthy findings of fact:

As to the Third Ground for Relief, which alleges inconsistent theories of prosecution in the Carl Lindsey and Joy Hoop trials, pertaining to Kathy Kerr's testimony in the Hoop trial that she may have heard gun shots on her way home after leaving the Slammer's bar, and further as developed by the testimony of Thomas Merriman regarding certain alleged admissions to him by Joy Hoop as to a second gun being involved and Joy Hoop's telling him that she fired the fatal shot, this Court once again finds no entitlement to post-conviction relief on behalf of the Petitioner Lindsey.

At the [Hoop] trial, Mr. Thomas Merriman apparently was found or came forward, and provided an alternative possibility that Joy Hoop may have fired the fatal shot. Mr. Merriman was arguably not a very credible witness in the first instance, and the jury in Hoop may have accordingly discounted this alternate testimony-theory presented through Mr. Merriman. Merriman admitted he was "burnt out" and a drug addict. He also identified in the courtroom a female Assistant Prosecuting Attorney as being the Defendant Joy Hoop. Additionally, he was an admitted long time friend of Carl Lindsey. As to his credibility, the jury must reasonably have asked the following query: "Why would Joy Hoop confide in someone she didn't really know all that well, and even ostensibly admit to that casual acquaintance the commission of a murder?" Additionally, Merriman was unknown to the State as a witness in Lindsey. It is further significant that the State's prosecution of Joy Hoop was not as a principal offender but as complicator. Thus, while Merriman's testimony was offered by the State, it has all the appearances of having been "thrown in" because Mr. Merriman had been discovered.

Regarding Kathy Kerr's "variant" testimony regarding possibly hearing shots on the way home in Hoop, and not having so testified regarding such shots in the Lindsey trial, Ms. Kerr stated in Hoop regarding the shots "I'm not certain." It was brought out in regard to Ms. Kerr that her story had changed from statement to statement, and from time to time. It was for the jury to assess her credibility, as one of the pieces of the puzzle presented by the State. This Court cannot say that the outcome of Mr. Lindsey's trial would have been different had Ms. Kerr testified at Lindsey as she subsequently did at Hoop. In any event, Ms. Hoop was not charged as a principal offender, and this testimony was in some respects superfluous. In the testimony of Dr. Timothy McKinley, the Brown County Coroner, the first shot to Whitey Hoop occurred in the vehicle, and this first shot was to the mouth/cheek area and was not fatal, unless Hoop bled out which would take approximately one to one and one-half hours at the minimum. Dr. McKinley's testimony was further that Whitey Hoop would have been able to and

25

in fact did continue to move around/struggle etc., as indicated by the blood on the ground in the parking lot and the blood on the wall of the building above Whitey Hoop's body. The second shot to the forehead was the fatal shot, and would have put Whitey Hoop down immediately, would have been almost instantaneously fatal, and would have rendered Whitey Hoop unconscious immediately. Accordingly, Whitey was from the testimony of Dr. McKinley laying flat when the second shot was fired, due to the blood flowing back over the forehead, as occasioned by the gravity pull. At the Lindsey trial Dr. McKinley opined, that the fatal shot occurred with Whitey on the ground. At the Hoop trial, Dr. McKinely said that it was "possible" that Whitey may have been standing up, since it would take a few seconds for the blood to stop flowing and that Whitey may have fallen and the blood would have begun flowing downward over the forehead after he fell from a shot in a standing position. If Whitey Hoop were standing, Joy Hoop would not have been the shooter, since Kathy Kerr testified she saw Whitey on the ground and bloody, with the Defendant Lindsey nearby. Likewise, even if Whitey Hoop were on the ground when the fatal shot was fired, the other evidence of Whitey being on the ground when Kathy Kerr came out and Lindsey standing nearby would essentially eliminate Joy Hoop as the shooter, since the first shot would not have put Whitey on the ground, and only the second fatal shot would have put him on the ground. Since he was already on the ground, prior to Joy Hoop exiting the Slammer's Bar, the only reasonable conclusion is that the Defendant Lindsey fired the second and fatal shot. Dr. McKinley further admitted during the Hoop trial that if Whitey Hoop was shot while standing, regarding the fatal shot in the forehead, that he would "probably" be on the ground in three seconds, and that as to whether Whitey was standing or flat on the ground when shot the second time that "it could be either way". Dr. McKinley also testified that there were no specific areas, or notation of injuries, that would have accounted for Whitey being on the ground, thus leaving to the conclusion that Whitey was on the ground when Kathy Kerr exited, and before Joy Hoop exited, by reason of having been shot the second and fatal time by the Defendant Lindsey.

There is also credible testimony/evidence in the Lindsey trial which was presented to the jury as to Lindsey being the principal offender, including Whitey's wallet being in the bathroom at Kathy Kerr's with the Defendant Lindsey, the bloodstained clothes present in the tub in the same bathroom, the .22 caliber pistol with bloodstain consistent with Whitey Hoop's blood, and in the same bathroom with the Defendant Lindsey bullets in a box that were consistent in class characteristics with the spent shells involved in the shooting and killing of Whitey Hoop. Thus, the decedent's wallet, the bloodstained clothing, the same type of pistol utilized with the decedent's blood, and bullets with consistent class characteristic all support the jury's finding of Lindsey as the principal offender.

(Appx., ECF No. 152-10, at PAGEID # 8674-8690.)

Petitioner appealed the trial court's denial of post-conviction relief and the Twelfth

District Court of Appeals affirmed, finding in relevant part:

> Appellant argues in his third and fifth grounds for relief that the state presented two different theories of the crime in the trials of appellant and co-defendant, Joy Hoop. Appellant argues "the evidence adduced at Joy Hoop's trial coupled with the record in [appellant's] case lead to the inescapable conclusion that appellant is actually innocent of the crime for which he was sentenced to death."
>
> However, the "State's presentation of varying theories in different cases involving individual defendants does not rise to the crest of violating basic tenets and consideration of due process." *State v. Cohen* (Apr. 29, 1988), Lake App. No. 12-011, at *17. Therefore, we find nothing in the record that would lead us to conclude that the prosecutor engaged in any misconduct that deprived appellant of a fair trial. Also, there were no operative facts set forth to demonstrate that the presentation of a different theory of the crime in the trial of the co-defendant, Joy Hoop, prejudiced appellant.

*State v. Lindsey*, No. CA2002-02-002, 2003 WL 433941, *7 (Ohio App. 12th Dist. Feb. 24, 2003).

The state courts also considered the inconsistent theories issue in connection with

Petitioner's motion for a new trial. The trial court denied the motion, and the court of appeals

affirmed. After setting forth a detailed recitation of the facts, the court of appeals determined:

> On May 29, 1997, Joy Hoop was indicted on four counts alleging her participation in aggravated murder, with two death penalty specifications. The first specification charged that the aggravated murder was a murder for hire (R.C. 2929.04[A][2]). The second specification charged that the aggravated murder was done during the commission of or in flight from the commission of an aggravated robbery, and that appellant was the principal offender or that the aggravated murder was committed with prior calculation and design (R.C. 2929.04[A][7]).
>
> Hoop filed a motion seeking to require that the state choose between the alternative allegations in the second specification. The trial court granted the motion and the state chose to proceed on the alternative that the aggravated murder was committed during the commission of or in flight from the commission of an aggravated robbery and with prior calculation and design. That part of the specification which alleged that appellant [Hoop] was the principal offender was dismissed.
>
> At Hoop's trial, the state elicited testimony from Thomas Merriman, an acquaintance of appellant. He testified that Hoop told h[im] that appellant "didn't

27

finish the job and she had to go out and shoot [Whitey] a second time in the head." Based on this testimony, appellant filed a motion for a new trial. He alleged that the witness and his testimony was not disclosed to him, or known by him, at the time of his trial, and in fact did not become known to him until the conclusion of Hoop's trial. He argued that the testimony contradicts his conviction with a specification that he was the principal offender, and that he is thus entitled to a new trial.

The trial court denied the motion, concluding that the newly discovered evidence did not disclose a strong possibility that the result of a new trial would likely be different. He appeals raising one assignment of error in which he alleges that the trial court erred in denying his motion for a new trial.

In order to be granted a new trial on the basis of newly-discovered evidence, the defendant must show that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro* (1947), 148 Ohio St. 505, 76 N.E.2d 370, syllabus.

"Where the case has been tried to a jury, the task for the trial judge is to determine whether it is likely that the jury would have reached a different verdict if it had considered the newly discovered evidence." *Dayton v. Martin* (1987), 43 Ohio App.3d 87, 90, 539 N.E.2d 646. "The task of the reviewing court is then to determine whether the trial judge abused its discretion in making this determination." *Id.* Likewise, "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." *State v. Smith* (1986), 30 Ohio App.3d 138, 139, 506 N.E.2d 1205. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 158, 404 N.E.2d 144. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." *State v. Morton,* Summit App. No. 21047, 2002–Ohio–6458, at ¶ 42, citing *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 1993–Ohio–122.

We note that the trial court properly found that the newly-discovered evidence met the second and third criteria under *Petro* as Merriman's statements were not discovered until Hoop's trial, several months after appellant's trial. However, "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." *State v. Agurs* (1976), 427 U.S. 104, 109–110, 96 S.Ct. 2392. Where there is "no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."

28

*Id.* at 112–113; *State v. Baker* (Oct. 15, 2001), Clinton App. No. CA2000–08–018.

In the present matter, there is no reasonable doubt regarding appellant's guilt, even considering the new evidence. Appellant was overheard saying he would kill Whitey. He was followed from the scene of the crime by a police officer, and was later found soaking blood stained clothes in a bathtub. Police found Whitey's wallet, the murder weapon and ammunition nearby. Bloodstains consistent with the victim's blood were found on appellant's clothing and in his truck. Evidence further indicated that he had recently fired a gun. At trial, appellant never raised the defense that he now posits, that he did not fire the fatal shot but instead abandoned his attempt to kill Whitey after firing once.

Considering this same evidence on appeal of the denial of appellant's petition for postconviction relief, this court stated: "the State's presentation of varying theories in different cases involving individual defendants does not rise to the crest of violating basic tenets and consideration of due process. * * * [T]here were no operative facts set forth to demonstrate that the presentation of a different theory of the crime in the trial of the co-defendant, Joy Hoop, prejudiced appellant." *State v. Lindsey,* Brown App. No. CA2002–02–002, 2003–Ohio–811, ¶ 33–34 (citations omitted).

Reviewing this same evidence with regard to appellant's motion for a new trial leads to the same conclusion. Appellant has failed to present evidence disclosing a strong probability that the result of a new trial, if granted, would be different. We therefore conclude that the trial court did not abuse its discretion by denying the motion for a new trial without a hearing. The assignment of error is overruled.

*State v. Lindsey*, No. CA2003-07-010, 2004 WL 1877734, *2-4 (Ohio App. 12th Dist. Aug. 23, 2004). This decision constitutes the last reasoned state court decision on this issue.

The Warden's merit brief sets forth two arguments as to why this Court should deny Petitioner's Third Claim for Relief. First, Respondent asserts that even if the state presented contradictory testimony between the two trials, "the United States Supreme Court has never held that the Due Process Clause precludes the state from pursuing separate prosecutions for the same crime under contradictory theories or inconsistent factual premises at trial," and therefore "Petitioner cannot demonstrate that the decisions of the Ohio courts were contrary to or an unreasonable application of clearly established Supreme Court precedent." (Brief, ECF No. 80,

29

at PAGEID # 1168.)   Secondly, Respondent argues the State did not proceed with two separate theories regarding the actual shooter, because Petitioner Lindsey was charged as the principal offender in the case, and Joy Hoop was charged under theories of conspiracy and complicity. (*Id*. at PAGEID # 1166.)   This Court agrees.

Indisputably, Petitioner's habeas claims are governed by the AEDPA, and therefore relief is available only if the decision of the Ohio Court of Appeals was contrary to or an unreasonable application of "clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).   The United States Supreme Court has never held that the use of inconsistent theories of prosecution raises a due process violation.   Thus, even if the State of Ohio presented inconsistent theories about who fired the fatal shot, habeas relief is denied, as there is no clearly established federal law supporting Petitioner's inconsistent theories claim.   *Bradshaw v. Stumpf*, 545 U.S. 175, 190 (2005) (Thomas, J., concurring) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories.").   *See also Stumpf v. Robinson*, 722 F.3d 739, 751 (6th Cir. 2013) (en banc) ("A criminal defendant has the right to a fair proceeding in front of an impartial factfinder based on reliable evidence.   He does not have the right to prevent a prosecutor from arguing a justifiable inference from a complete evidentiary record, even if the prosecutor has argued for a different inference from the then-complete evidentiary record in another case."); *Blalock v. Wilson*, 320 F. App'x 396, 418 n.26 (6th Cir. 2009) (there is no "clearly established Supreme Court . . . precedent showing that such a prosecutorial strategy would violate a defendant's due process rights"); *Melton v. Klee*, No. 11-14634, 2019 WL 1315723, at *8-10 (E.D. Mich. Mar. 22, 2019) ("There is no clearly established federal law

supporting Petitioner's inconsistent theories claim.").   In sum, it cannot be said that the state

court's denial of this claim was contrary to, or an unreasonable application of clearly established

Supreme Court precedent, where there is no clearly established federal law on this issue.

Habeas relief is denied on this basis.

Additionally, it is well established that in the absence of some underlying constitutional

violation, a federal habeas court may not review a state court's denial of a motion for a new trial

based on newly discovered evidence.   *Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009).   In

conducting this limited constitutional review, the Court owes considerable deference to the

extensive factual findings of the state courts and Petitioner has presented no evidence that those

determinations were unreasonable or wrong within the strict confines of the AEDPA.   Petitioner

Lindsey was charged as the principal offender and the state courts determined the evidence of his

guilt was overwhelming.   Three witnesses testified at his trial that he willingly agreed to kill

Whitey Hoop shortly before the murder.   When Kathy Kerr exited the bar, Whitey Hoop was on

the ground and Petitioner Lindsey was standing nearby.   A Sheriff's deputy observed Petitioner

leave the scene of the murder and head to the Kerr residence a short distance away.   When

Petitioner was found there shortly after the murder, he was soaking his blood-stained clothes,

was in possession of a firearm consistent with the murder weapon, and Whitey Hoop's empty

wallet was in the trash can.   Blood consistent with the victim's was found in Petitioner's truck.

The fact that the state presented a new witness at Joy Hoop's trial, who provided questionable

testimony in the form of an alleged statement by Hoop, does not negate the overwhelming

evidence of Petitioner's guilt, nor does it call into question whether Petitioner fired the initial

shot into Whitey Hoop's face.

Under Ohio law, an aider and abetter is treated the same as a principal offender, "so long as the aiding and abetting is done with the specific intent to cause death." *Bradshaw v. Stumpf*, 545 U.S. 175, 184 (2005) (relying on *In re Washington*, 81 Ohio St.3d 337, 691 N.E.2d 285, 286-87 (1998). Consistent with this, the state argued during closing arguments in Hoop's trial that the evidence was uncertain as to whether Hoop or Lindsey fired the fatal shot, and that for purposes of convicting Joy Hoop, it did not matter. (ECF No. 152-9, at PAGEID # 7874-7936.) The prosecution always maintained that Petitioner Lindsey agreed to kill Whitey Hoop at the request of Joy Hoop, and that Petitioner shot Whitey Hoop in the face. The testimony of the new witness, if believed, did not negate Petitioner's liability for the crime. As the Twelfth District Court of Appeals determined, "there is no doubt regarding appellant's guilt, even considering the new evidence." *Lindsey*, 2004 WL 1877734, *4. Furthermore, the Court notes that Petitioner has failed to offer proof of any deliberate attempt to deceive the court or the jury, or effort by the prosecutor to keep the factfinder from making an informed decision. Petitioner's Third Claim for Relief is DENIED.

In the absence of clearly established federal law on this issue, the Court cannot conclude that a certificate of appealability is warranted on Petitioner's Third Claim for Relief.

### Fourth Claim for Relief:

> The trial court failed to ensure that the culpability phase of Mr. Lindsey's capital trial was constitutionally fair and reliable.

In his Fourth Claim for Relief, Petitioner argues the trial court improperly admitted hearsay evidence under Ohio's co-conspirator exception. (Petition, ECF No. 9-1, at PAGEID # 175-178.) Initially, Petitioner also alleged the trial court erroneously overruled his objections to the qualifications of the Brown County Coroner and gave an erroneous instruction regarding the

definition of "purpose."   (*Id*. at PAGEID # 178-180.)   In his Traverse, Petitioner withdrew the allegations concerning the trial court's instruction on purpose, ECF No. 20, at PAGEID # 375, and stated the allegations concerning the coroner's qualifications were addressed in connection with his Fifth Claim for Relief, which has also been withdrawn.   (*Id*. at PAGEID # 375; ECF No. 63.)   Thus, only the allegations regarding the co-conspirator statements remain as part of Petitioner's Fourth Claim for Relief.

Petitioner claims the trial court improperly admitted hearsay statements of co-defendant Joy Hoop under Ohio's co-conspirator exception, Ohio Evidence Rule 801(D)(2)(e), through the testimony of witnesses Kenny Swinford, A.J. Cox and Kathy Kerr.   Petitioner asserts the statements were not admissible under Ohio's co-conspirator exception, because "the prosecution failed to first establish a prima facie case of conspiracy, necessary for the introduction of co-conspirator statements under Ohio Evid. R. 801(D)(2)(e)."   (ECF No. 75, at PAGEID # 1122.) Petitioner contends the erroneous admission of this hearsay evidence had a "substantial and injurious effect" on the jury's verdict, because the hearsay provided the jury with a motive for the murder and bolstered the prosecution's theory of murder-for-hire.   (*Id*. at PAGEID # 1127.) According to Petitioner, "[m]otive strongly influences a jury, which the prosecutor well knew as he relied upon these statements repeatedly in closing argument.   With full use of hearsay statements, he was able to perpetuate that scenario even though the murder-for-hire charge had been dismissed and there was no charge of conspiracy."   (*Id*.)   Petitioner argues the admission of these statements violated his rights under the Confrontation Clause and his due process rights to a fundamentally fair trial.   (Petition, ECF No, 9-1, at PAGEID # 176.)   Respondent counters that Petitioner's arguments regarding Swinford's testimony are defaulted, because Petitioner

33

failed to object at trial and the Ohio Supreme Court enforced that default, reviewing the

testimony only for plain error.   (ECF No. 12, at PAGEID # 294.)

On direct appeal, the Ohio Supreme Court determined the co-conspirator statements were

properly admitted, and that prima facie evidence of a conspiracy existed regardless of the fact

that the murder-for-hire specification was dismissed:

> In his thirteenth proposition of law, appellant contests the trial court's admission of certain witnesses' testimony.   He argues first that the trial court erred by admitting the hearsay statements of Joy Hoop, appellant's alleged co-conspirator, without a proper foundation under the co-conspirator exception in Evid.R. 801(D)(2)(e).   Specifically, appellant challenges the testimony of witness A.J. Cox that, after laying a knife on the bar, Joy said: "If that ain't good enough, this right here should take care of it, I got this."   The witness did not see what "this" was but heard a sound like a heavy, metallic object.
>
> Evid.R. 801(D)(2)(e) provides: "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."   Under this rule, the * * * statement of a co-conspirator is not admissible until "the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof."   *State v. Carter* (1995), 72 Ohio St.3d 545, 550, 651 N.E.2d 965, 972.
>
> Appellant argues that the trial court improperly admitted the testimony of Cox before a prima facie case of conspiracy had been made.   At the time Cox's testimony was admitted, however, the state had presented the testimony of Kathy Kerr, which was sufficient to set forth a prima facie showing of conspiracy.   The offense of conspiracy is defined in R.C. 2923.01 as the agreement to accomplish a particular unlawful object, coupled with an overt act in furtherance thereof, whether remuneration is offered or not.   Kerr testified that appellant and Joy were romantically involved, that while discussing Whitey, appellant told Joy "he would do him in," and that she saw Joy give appellant a gun.   From this testimony it is reasonable to conclude that a conspiracy existed to kill Whitey and that the transfer of the gun was an overt act in furtherance thereof.   We are unpersuaded by appellant's contention that Kerr's impeachment on cross-examination undermines the conspiracy evidence, as Kerr's veracity was a question for the trier of fact.
>
> Nor do we agree with appellant's next argument.   Appellant contends that because the trial court dismissed the murder-for-hire specification, the state could not have demonstrated the existence of a conspiracy.   Conspiracy, however, is not the equivalent of murder for hire.   Rather, under R.C. 2929.04(A)(2), murder for hire requires proof of an additional element not contained in the offense of conspiracy, specifically, that the murder "was committed for hire."   Because the

state failed to present any evidence of compensation, the murder-for-hire specification was dismissed. But, as set forth in the statute, a conspiracy may exist without regard to whether remuneration is offered. Accordingly, a lack of evidence as to compensation has no bearing on the existence of the conspiracy. Appellant's argument is therefore without merit.

Appellant next contends that the trial court erred in allowing the testimony of witness Kenny Swinford. Appellant disagrees with the admission of Swinford's statement that he participated in a conversation with Joy Hoop, Kathy Kerr, and a third person whose identity he did not know. Appellant contends that because Swinford never identified appellant as the unknown man, his testimony about that conversation was inadmissible. Similarly, appellant argues that Swinford improperly testified to what "they" were saying without identifying the individuals speaking.

Appellant, however, failed to object on either of these grounds at trial and therefore waived all but plain error. See *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 925. Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right. Crim.R. 52(B). Under this standard, reversal is warranted only if the outcome of the trial clearly would have been different absent the error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Upon review of Swinford's testimony in the plain error context, we are unpersuaded that the outcome would have been different had Swinford not testified. Accordingly, appellant's thirteenth proposition of law is overruled.

*State v. Lindsey*, 87 Ohio St. 3d 479, 481-82 (2000).

As an initial matter, the Court notes that on direct appeal, as his thirteenth proposition of law, Petitioner raised a purely state law claim regarding the hearsay statements. Petitioner argued the statements at issue did not meet the additional admissibility safeguards established by state law:

Case law has established that before any co-conspirator statements can be admitted, the State must independently prove a conspiracy existed. State v. Carter (1995), 72 Ohio St.3d 545, 651 N.E.2d 965. In this respect, the Ohio Rule differs from the Federal Rule, which does not require independent proof of a conspiracy prior to admission of the statements. Independent proof of a conspiracy must be made by a *prima facie* showing.

(Appx., ECF No. 152-7, at PAGEID # 6875.) Petitioner's entire proposition of law was couched in terms of state evidentiary law, with no citation to federal case law or reference to the

35

United States Constitution.   Petitioner made no reference to the Confrontation Clause, or even

due process.   Likewise, the Ohio Supreme Court resolved the merits of the claim on purely state

law grounds.

      In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly

present the substance of his federal constitutional claim to the state courts.   *Anderson v.*

*Harless,* 459 U.S. 4, 6 (1982); *Picard v. Connor,* 404 U.S. 270, 275 (1971).   Although the fair

presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples,* 489 U.S.

346, 349 (1989); *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45 (1999), it is rooted in principles

of comity and federalism designed to allow state courts the opportunity to correct the State's

alleged violation of a federal constitutional right that threatens to invalidate a state criminal

judgment.   A petitioner fairly presents the "substance of his federal habeas corpus claim" when

the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal

principles to the facts bearing upon the constitutional claim.   *Harless,* 459 U.S. at 6.   Although

a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he

presents an issue to the state courts under one legal theory and set of facts, and then presents the

issue to the federal courts under a different legal theory or a different set of facts.   *McMeans v.*

*Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).   Rather, he must present to the federal court

essentially the same facts and legal theories that were considered and rejected by the state courts.

*See Lott v. Coyle,* 261 F.3d 594, 607 (6th Cir. 2001).   The Sixth Circuit has held that a petitioner

fairly presents his federal claim to the state courts in one of four ways: (1) relying on federal

cases employing constitutional analysis; (2) relying on state cases that employ federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts that are well within the mainstream of constitutional law. *Whiting v. Burt,* 395 F.3d 602, 613 (6th Cir. 2005) (quoting *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000)). Where the petitioner did not present the federal claim but instead presented a purely a state-law claim, the federal claim is not exhausted. When any attempt now to return to state court to exhaust the federal issue would fail as untimely or as barred by *res judicata*, the federal claim is procedurally defaulted.

The Court finds Petitioner failed to fairly present his Fourth Claim for Relief to the state courts as a federal constitutional claim. The Court notes, however, that Respondent did not raise this particular procedural default defense. Nevertheless, this Court is within its authority to reject this claim on the basis of procedural default *sua sponte*. In *Sheppard v. Bagley*, 604 F. Supp. 2d 1003 (S.D. Ohio 2009), *aff'd*, 657 F.3d 338 (6th Cir. 2011), the district court noted that although it may be "unusual" for a habeas court to raise a procedural default *sua sponte*, it may be "particularly appropriate to do so where the petitioner explicitly argued in the state courts that state law provided him with more protections tha[n] the corresponding federal law, and where he rested his state claims exclusively on state law." *Id.* at 1010. Here, as in *Sheppard*, "[b]y arguing that state law afforded him greater protection than federal law, . . . Petitioner actually deprived rather than provided the state courts an opportunity to remedy the constitutional violation that Petitioner allege[s] in his habeas petition." *Sheppard*, 604 F. Supp. 2d at 1009. *See also Ahmed v. Houk*, No. 2:07-CV-658, 2014 WL 2709765 (S.D. Ohio June 16, 2014) (Report and Recommendation noting the court had "been reluctant to raise the defense *sua sponte* except in cases where an expressly defederalized claim was presented to the state

courts"), *report and recommendation adopted*, *Ahmed v. Houk*, No. 2:07-CV-658, 2020 WL 5629622 (S.D. Ohio Sept. 21, 2020).

To be sure, the concern with raising procedural default *sua sponte*, is that Petitioner has not had an opportunity to respond.  *See, e.g.*, *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005) ("The main concern with raising procedural default *sua sponte* is that a petitioner not be disadvantaged without having had an opportunity to respond.") (citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002)).   That concern is not present here, because even if this claim was not defaulted, it plainly lacks merit.   "To the extent Petitioner argues that this testimony was improperly admitted hearsay or was not properly authenticated, those are state law claims and not cognizable on federal habeas review."  *Lash v. Sheldon*, 1:19-CV-1616, 2020 WL 6712165, at *18–19 (N.D. Ohio Oct. 20, 2020), *report and recommendation adopted*, *Lash v. Turner*, 1:19-CV-1616, 2020 WL 6702051 (N.D. Ohio Nov. 13, 2020).  *See also Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review"); *Smith v. Jones*, 326 F. App'x 324, 330 (6th Cir. 2009) (claim that trial court improperly admitted statements under a hearsay exception is a state evidentiary law issue not cognizable on federal habeas review); *Graves v. Romanowski*, No. 2:07-10463, 2008 WL 362990, *5 (E.D. Mich. Feb. 11, 2008) (finding a petitioner's claim that the trial court violated his right to a fair trial by admitting recorded telephone conversations under a co-conspirator exception to the state's hearsay rules raised only a non-cognizable issue of state law.   It is only when an evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation is it cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 400 F.3d 514, 522 (6th Cir. 2007).

38

Petitioner argues the admission of Joy Hoop's statements, through the testimony of witnesses Swinford, Cox and Kerr, violated his Sixth Amendment Confrontation Clause rights. *Crawford v. Washington*, 541 U.S. 36 (2004) does not apply here, because Crawford was not decided until 2004, and the Ohio Supreme Court rendered the last state judgment on the merits of this claim in 2000. *Crawford* does not apply retroactively on collateral review. *Whorton v. Bockting*, 549 U.S. 406, 409 (2007). The then governing law was *Ohio v. Roberts*, 448 U.S. 56 (1980), which required as a matter of Confrontation Clause law that, as to an unavailable declarant, hearsay could be admitted if it bore particularized guarantees of trustworthiness or fell within a firmly-rooted hearsay exception. 549 U.S. at 412. Here, the Ohio Supreme Court concluded that the evidence was sufficient to prove the existence of a conspiracy so as to permit the introduction of the Hoop statements as an exception to the hearsay rule. What is or is not hearsay in a state court trial is governed by state law. To the extent Petitioner contends the Hoop statements were hearsay, this Court must defer to the Ohio Supreme Court's factual determination that the State laid a proper foundation such that the challenged statements constituted declarations of a co-conspirator, and were, therefore, admissible as non-hearsay under Evid. R. 801(D)(2). The decision of the Ohio Supreme Court is not contrary to clearly established federal law as it existed at the time of Petitioner's convictions and appeal.

For the foregoing reasons, the Court hereby denies Petitioner's Fourth Claim for Relief. Because two independent reasons exist for denying relief on this claim, the Court finds that a certificate of appealability shall not issue.

### Sixth Claim for Relief:

Egregious prosecutorial misconduct at both the culpability and mitigation phase violated Mr. Lindsey's right to due process, a fair

trial, and the effective assistance of counsel. U.S. CONST. AMENDS V, VI, VIII, XIV.

In his Sixth Claim for relief, Petitioner complains of "egregious prosecutorial misconduct" at both phases of his trial. With respect to the guilt phase of his trial, Petitioner repeats his complaints regarding suppressed impeachment evidence, the use of perjured testimony from Kathy Kerr, and the state's use of inconsistent theories of prosecution. As to the penalty phase of his trial, Petitioner contends the prosecutor argued improper aggravating circumstances during closing argument. Finally, Petitioner argues the cumulative effect of prosecutorial misconduct throughout his trial warrants habeas relief. (Petition, ECF No. 9-2, at PAGEID # 189-196.)

Respondent argues that Petitioner's guilt phase arguments of prosecutorial misconduct lack merit, and for the reasons discussed in connection with Petitioner's Second and Third Claims for Relief, this Court agrees. With respect to Petitioner's argument that the prosecutor improperly argued the nature and circumstances of the offense during the penalty phase closing argument, Respondent contends this allegation is procedurally defaulted because Petitioner failed to object at trial, and as a result of that waiver, the Ohio Supreme Court reviewed the claim only for plain error. Finally, Respondent asserts Petitioner has never presented his cumulative effect argument regarding prosecutorial misconduct to the state courts. (Return, ECF No. 12, at PAGEID # 304-305.) Respondent is equally correct regarding these defaults.

Petitioner raised his argument challenging the prosecutor's penalty phase closing argument on direct appeal as his first proposition of law. The Ohio Supreme Court found the claim waived due to Petitioner's failure to object at trial, and reviewed the claim only for plain error:

Appellant's first proposition of law concerns the prosecutor's conduct in the penalty phase of the trial. Appellant challenges the following statements made by the prosecutor:

> (1) "I guess that they said he grew up in a bad home, although it improved with his grandparents; he was gone from the home for a period of time; and he has an alcohol problem. *Do they outweigh what he did?*"

> (2) "We have Al Nehus here. I'm not sure what he said other than he's been a good prisoner. I don't see how that in any way mitigates *what he's done in this case, how that mitigates murdering somebody coldbloodedly in the course of a robbery, and that's what this is about.*"

> (3) "There is nothing that has been presented to you that *outweighs what he did to Whitey Hoop, nothing. * * * [T]he circumstances of the offense itself outweigh those mitigating factors that have been presented here today.*"

> (4) "[W]hat you have to go back and decide is whether the Defendant's having taken a gun during the course of a robbery, held it to Mr. Hoop's face, pulled the trigger once, struggled with him, taking his wallet, and then place that gun to his forehead an eighth of an inch away or closer and pulled that trigger ending his life, whether that outweighs the fact that he didn't come from a perfect home. That's the issue which you have to decide."

As appellant argues, portions of the above comments improperly suggested that the nature and circumstances of the offense were to be viewed by the jury as aggravating circumstances. R.C. 2929.04(B) allows the nature and circumstances of the offense to be involved in the weighing of aggravating circumstances against mitigating factors only on the side of mitigation. *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 356, 662 N.E.2d 311, 322. As we explained in *Wogenstahl,* "the 'aggravating circumstances' against which the mitigating evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in R.C. 2929.04(A)(1) through (8) that have been alleged in the indictment and proved beyond a reasonable doubt." "[I]t is improper for prosecutors in the penalty phase of a capital trial to make any comment before a jury that the nature and circumstances of the offense are 'aggravating circumstances.'" *Id.*

Appellant, however, failed to object to the prosecutor's comments at the time they were made. Accordingly, appellant waived any error except to the extent it constitutes plain error. Viewed in this context, the prosecutor's remarks did not

alter the outcome of the trial and therefore did not rise to the level of plain error.

> Nor do we believe that the prosecutor's misstatement of the burden of proof in the weighing process constituted plain error. The prosecutor did ask whether the mitigating factors outweighed what appellant did, improperly suggesting that the defense had the burden of showing that mitigating factors outweighed the aggravating circumstances. See *State v. Bey* (1999), 85 Ohio St.3d 487, 495–496, 709 N.E.2d 484, 494. But this misstatement occurred only twice in the context of various other times throughout his argument where he presented the correct standard.

> Furthermore, the trial court correctly instructed the jury on both of these issues. As a result, any confusion caused by the prosecutor's misstatements was cured. See *id.* Appellant's first proposition of law is overruled.

*Lindsey*, 87 Ohio St. 3d at 485-486 (emphasis in original).

The procedural default doctrine relied on by Respondent, is described by the Supreme

Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000). A petitioner may not raise in federal habeas corpus a federal constitutional

claim he could not raise in state court because of a procedural default. *Wainwright v. Sykes*, 433

U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a

federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to

federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (quoting

*Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996)). "[A] federal court may not review

federal claims that were procedurally defaulted in state court – that is, claims that the state court

denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Once the court determines that a state procedural rule was not complied with and the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Theriot v. Vashaw*, ___ F.3d ___, No. 20-1029, 2020 WL 7379397, *2 (6th Cir. Dec. 16, 2020); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Applying that analysis, the Court finds that Ohio has a relevant procedural rule, requiring a contemporaneous objection to trial court error; parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). In this case, the Ohio Supreme Court enforced that rule by reviewing Petitioner's penalty phase claim of prosecutorial misconduct under the plain error standard. An Ohio appellate court's review for plain error is enforcement, not waiver, of a procedural default, such as a failure to make a contemporaneous objection at trial. *Neil v. Forshey*, No. 20-3491, 2020 WL 6498732, at *4 (6th Cir. Oct. 30, 2020) (noting that "plain error review constitutes enforcement of the contemporaneous objection rule"). *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006). The Sixth Circuit has repeatedly held that Ohio's contemporaneous objection rule is an adequate and independent basis of state court decision. *Wogenstahl*, 668 F.3d at 334 (6th Cir. 2012) (citing *Keith v.*

*Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir.

2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010).   Although a procedural default

can be excused by an adequate showing of cause and prejudice, Petitioner proffers no excusing

cause, instead arguing that this Court can consider even defaulted claims of prosecutorial

misconduct as part of a cumulative error review of the actions of the prosecutor.   What is

lacking, however, is any supporting case law to that effect.   The Court finds Petitioner's penalty

phase prosecutorial misconduct claim procedurally defaulted.

     In the alternative, Petitioner's claim is also without merit.   It is well settled that "[t]o

grant habeas relief based on prosecutorial misconduct that does not violate a specific guarantee

under the bill of Rights, the misconduct must be so egregious as to deny the Petitioner due

process." *Lorraine v. Coyle*, 291 F.3d 416, 439 (6th Cir. 2002) (citing *Donnelly v.

DeChristoforo*, 416 U.S. 637, 643-45 (1974)).   A reviewing court must first determine whether

prosecutorial misconduct occurred, and if so, whether the misconduct was prejudicial.   In so

doing, the reviewing court should consider the challenged remarks within the context of the

entire trial to determine whether any improper remarks were prejudicial.   *Cristini v. McKee*, 526

F.3d 888, 901 (6th Cir. 2008).   It bears reminding, with respect to prosecutorial misconduct

claims, that the "[p]etitioner's burden on habeas review is quite a substantial one."   *Byrd v.

Collins*, 209 F.3d 486, 529 (6th Cir. 2000).   Even misconduct that is universally condemned

does not warrant habeas corpus relief unless the misconduct was so flagrant and egregious as to

deny the petitioner a fundamentally fair trial.   *Donnelly*, 416 U.S. at 643-54.   Finally,

prosecutorial misconduct during the penalty phase of a capital trial may be "cured by appellate

reweighing."   *LaMar v. Houk*, 798 F.3d 405, 431 (6th Cir. 2015) (finding that "all the alleged

prosecutorial misconduct during the penalty phase was cured when the Ohio Supreme Court independently reweighed aggravation and mitigation") (citing *Lundgren v. Mitchell*, 440 F.3d 754, 783 (6th Cir. 2006)); *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) ("While we independently believe that any prosecutorial misconduct did not tip the scales against Trimble during the penalty phase, the Ohio Supreme Court's decision to reweigh the aggravating and mitigating factors definitively cures any potential error from the alleged prosecutorial misconduct.").

In a death penalty case, the state has some leeway to refer to the facts and circumstances of the crime to dispel the mitigating circumstances.   However, assuming, as the Ohio Supreme Court did, that the argument of the prosecutor concerning the facts and circumstances of the crime was improper, the trial court properly instructed the jurors regarding the aggravating circumstance they could consider and the weighing process.   The trial court's complete charge, ECF No. 153-5, at PAGEID # 12192-12208, was a correct statement of the law and mitigated any misstatements by the prosecutor.   Additionally, the Ohio Supreme Court cured any error by conducting a thorough and independent reweighing of the aggravating and mitigating factors, finding "the aggravating circumstance of aggravated robbery conclusively outweighed the mitigating factors."   *State v. Lindsey*, 87 Ohio St. 3d 479, 491-492 (2000).   Finally, consideration of a non-statutory aggravating circumstance, even if contrary to state law, does not violate the United States Constitution.   *Nields v. Bradshaw,* 482 F.3d 442, 451 (6th Cir. 2007), *quoting Smith v. Mitchell,* 348 F.3d 177, 210 (6th Cir. 2003).   This sub-claim is without merit.

The Court hereby denies Petitioner's Sixth Claim for relief.   Because reasonable jurists

would not find the Court's resolution of this claim to be debatable or wrong, and two independent reasons exist to deny the claim, the Court declines to issue a COA.

### Seventh Claim for Relief:

> The trial court failed to ensure that the mitigation phase of Mr. Lindsey's capital trial was constitutionally fair and reliable.

In his Seventh Claim for Relief, Petitioner argues the actions of the trial court during the penalty phase of his trial denied him a fair trial. According to Petitioner, the trial court erred by readmitting all of the guilt phase evidence during the penalty phase, by sustaining the prosecutor's objection to testimony from Petitioner's wife that Petitioner did not like himself when he abused drugs, and by refusing to provide additional instruction to the jury in response to a question regarding the definition of the aggravating circumstances. Respondent acknowledges that each of these separate issues were raised on direct appeal to the Ohio Supreme Court, were considered by that court on the merits, and are properly before this Court on habeas review. Petitioner also asserts that the prosecutor improperly argued non-statutory aggravating factors during closing arguments, but that claim was resolved in the previous section of this Opinion and Order resolving Petitioner's Sixth Claim for Relief.

### A.   Improperly Admitted Guilt Phase Evidence

Petitioner asserts that at the outset of the mitigation phase, the trial court permitted the prosecution to admit all evidence from the guilt phase of the proceedings, over the objection of the defense. (Petition, ECF No. 9-2, at PAGEID # 197.) The trial court gave the jury a limiting instruction regarding this evidence, instructing the jury to consider "only those exhibits and only that evidence presented at the trial phase which are relevant to the specific aggravating circumstance for which the Defendant was found guilty." (ECF No. 153-5, at PAGEID #

46

12197, 12194-12195.)   The Ohio Supreme Court reviewed this claim, finding the trial court

erred by readmitting all of the evidence, but determining Petitioner did not suffer prejudice as a

result of the error:

> In his sixth proposition of law, appellant takes issue with the trial court's admission of all the guilt-phase evidence into the penalty phase of the proceedings. Specifically in contention is the trial court's failure to determine which of the guilt-phase evidence was relevant to the penalty phase. Instead of making that determination, the court instructed the jury to consider only that evidence relevant to the specific aggravating circumstance at issue.

> While R.C. 2929.03(D)(1) permits the reintroduction of much or all of the guilt-phase evidence during the penalty phase, it does not relieve the trial court of its duty to determine the evidence relevant for consideration.   See *State v. Getsy* (1998), 84 Ohio St.3d 180, 201, 702 N.E.2d 866, 887. In *Getsy,* we held that the trial court's admission of all the evidence from the trial phase—with an instruction to the jury to consider "all the evidence, including exhibits presented in the first phase of this trial which you deem to be relevant"—was error. *Id.* As we explained there, it is the trial court's responsibility, during the penalty phase, to identify and admit only the evidence relevant to that phase. Under the same reasoning, the trial court's admission here of all the guilt-phase evidence with a similar instruction to the jury was also error. In so doing, the trial court improperly delegated to the jury the court's duty to determine the evidence relevant to the penalty phase.

> As in *Getsy,* however, the admission of the specific evidence challenged as prejudicial and irrelevant did not prejudice the outcome of the trial.   Here, appellant points to bloody photographs of the victim, the bloodstains in appellant's vehicle, and the bloodstains on the premises of Slammer's bar as irrelevant and prejudicial to appellant. These items, however, were relevant to the aggravated robbery, the aggravating circumstance of which appellant was found guilty, as they demonstrated the element of serious physical harm to the victim.   R.C. 2911.01(A)(3), R.C. 2929.03(D)(1). While the trial court should have exercised its responsibility to determine the relevance of the evidence admitted, the evidence contested was neither irrelevant nor prejudicial to the penalty phase.   Accordingly, we overrule appellant's sixth proposition of law.

*State v. Lindsey*, 87 Ohio St. 3d at 484-485.   The Ohio Supreme Court determined that much of

the evidence of which Petitioner complains, was relevant to the aggravating circumstance of

aggravated robbery.   This determination is not contrary to nor an unreasonable application of

47

federal law. Although Ohio law may limit the evidence that may be considered in aggravation, federal law has no such requirement, apart from considerations of fundamental fairness. *See Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) ("The Eighth Amendment does not establish a federal code of evidence to supersede state evidentiary rules in capital sentencing proceedings.") "The question is whether the allegedly improper evidence 'so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process.'" *Kansas v. Carr*, 577 U.S. 108, 109 (2016) (quoting *Romano*, 512 U.S. at 12). Petitioner has made no such showing. *See also Cowans v. Bagley*, 624 F.Supp.2d 709, 813 (S.D. Ohio 2008) (finding trial court's readmission in the penalty phase of all culpability phase evidence insufficient to warrant habeas relief, and noting the absence of any clearly established Supreme Court precedent on the issue).

### B. Objection to Pamela Lindsey's Testimony

Petitioner complains that the trial court improperly limited the mitigation phase testimony of Pamela Lindsey, Petitioner's wife. (Traverse, ECF No. 20, at PAGEID # 393-394.) Specifically, Petitioner alleges that Mrs. Lindsey was not permitted to testify that Petitioner did not like himself when he was using drugs. The Ohio Supreme Court rejected this claim on the merits, finding any error harmless because the evidence was cumulative:

> In his fourth proposition of law, appellant challenges the trial court's exclusion of a statement made by appellant's wife. During that portion of her testimony, appellant's wife was discussing appellant's disappointment with himself about his substance-abuse problem. When asked how she knew he was disappointed, she responded: "Because he said that he did not like himself like that." The trial court sustained the state's objection to this statement without providing a basis for the exclusion, but both parties assume it was on hearsay grounds.
>
> Appellant argues that this information was crucial to his defense and

48

> therefore it was error to exclude it. Even assuming that the exclusion was error, however, it was harmless. Appellant's wife had already testified that appellant "was disappointed in himself" when he resumed his substance abuse. The further statement that he "said that he did not like himself like that" was cumulative and added nothing additional to the defense's point. Appellant's fourth proposition of law is overruled.

*Lindsey*, 87 Ohio St. 3d at 484. The finding by the Ohio Supreme Court that the additional testimony was cumulative is a finding of fact entitled to deference by this Court. Moreover, "[t]he Sixth Circuit has consistently recognized the United States Supreme Court's reluctance, even in light of its cases holding that the sentencer in a capital case cannot be precluded from considering or giving effect to relevant mitigating evidence, to hold that the Eighth Amendment forbids a state court from applying state evidentiary rules or exercising discretion in limiting the introduction of evidence as irrelevant or unduly prejudicial." *Sheppard v. Bagley*, 604 F. Supp. 2d 1003, 1018 (S.D. Ohio 2009). *See also Scott v. Houk*, No. 4:07cv0753, 2011 WL 5838195, *28 (N.D Ohio Nov. 18, 2011) (noting "the Supreme Court overtly has held that the issue of the admissibility of evidence in capital sentencing trials is one reserved specifically to a state's rules of evidence"). This sub-claim is plainly without merit.

### C. Failure to Answer Jury Question

Finally, Petitioner argues that during the penalty phase deliberations, the jurors sent a question to the trial court, requesting clarification regarding the aggravating circumstance. The Ohio Supreme Court considered and rejected this claim on the merits:

> Appellant's fifth proposition of law also challenges the trial court's instructions to the jury. Specifically, appellant argues that the court erred when it refused to provide further oral instruction to the jury upon request. During deliberations, the jury asked, "When weighing the mitigating evidence versus the aggravating circumstances, what are the aggravating circumstances? Is it solely the aggravated robbery or the combination of the aggravated robbery and the aggravated murder?'

49

Rather than instructing the jury orally on this point, the trial court referred the jury to the written instructions that contained the court's original instruction on that issue:

> It would be improper for you to weigh in this balance against the mitigating factors the aggravated murder itself as an aggravating circumstance. This is because the sentencing laws of Ohio have already incorporated consideration of the commission of the aggravated murder itself in setting the sentence now available to you. In other words, the sentences you are to consider have already been increased beyond that which would have been imposed for the aggravated murder itself due to the presence of the aggravating circumstance in this case.

> Appellant contends that the trial court had a duty to reinstruct the jury based upon that question. However, as we held in *State v. Carter* (1995), 72 Ohio St.3d 545, 651 N.E.2d 965, paragraph one of the syllabus, "[w]here, during the course of its deliberations, a jury requests further instruction, or clarification of an instruction previously given, a trial court has discretion to determine its response to that request." In *Carter* we concluded that the trial court acted within the scope of its discretion when it referred the jury to a written copy of the instructions rather than giving further oral instructions. *Id.* at 553.

> The same conclusion is warranted here. The trial judge referred the jury to the written instructions, which clearly and comprehensively answered the question. Even appellant admits that this instruction was a good statement of the law. Accordingly, the trial court's decision to refer the jury to that instruction rather than giving further oral instruction was appropriate and within the scope of its discretion. Appellant's fifth proposition of law is overruled.

*Lindsey*, 87 Ohio St. 3d at 487-488.   The Ohio Supreme Court found no abuse of discretion in the trial court's handling of the jury's question.   Additionally, the Ohio Supreme Court determined the trial court's written instructions, to which the jury was directed, were a correct statement of Ohio law, and Petitioner makes no argument to the contrary.   To challenge a legally accurate jury instruction, Petitioner must show that the instruction was ambiguous and there was a reasonable likelihood that the jury applied the instruction in a way that violated the United States Constitution.   *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009).   This,

Petitioner has not done. *See Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief.")

For the foregoing reasons, the Court finds Petitioner's Seventh Claim for Relief lacks merit. Because this claim relates primarily to issues of state law, the Court finds a certificate of appealability is not warranted. Reasonable jurists would not find the Court's resolution of this claim for relief to be debatable or wrong.

### Ninth Claim for Relief:

> The trial court violated Mr. Lindsey's due process rights when it denied Mr. Lindsey's post-conviction petition without first affording him the opportunity to conduct discovery and funding for an expert.

In his Ninth Claim for Relief, Petitioner argues the trial court violated his right to due process by denying his petition for post-conviction relief without affording him the opportunity to conduct discovery and funding for an expert. Petitioner alleges specifically that the trial court erred by denying his request for access to the prosecutor's complete files related to the prosecutions of both Petitioner and Joy Hoop. He further asserts the trial court erred in denying his request for funding to employ a neuropsychological expert.

Respondent acknowledges that Petitioner raised a general challenge to the adequacy of Ohio's post-conviction process in his appeal of the trial court's decision denying post-conviction relief, and that this claim is not procedurally defaulted. (Return, ECF No. 12, at PAGEID # 316.) Respondent argues, however, that the claim is not cognizable in federal habeas corpus and should be dismissed on that basis.

The Sixth Circuit has consistently held that challenges to Ohio's post-conviction process

are not a proper basis for habeas corpus relief. *Leonard v. Warden*, 846 F.3d 832, 854-55 (6th

Cir. 2017) ("This Court has held that 'habeas corpus cannot be used to mount challenges to a

state's scheme of post-conviction relief.'"). *See also Cornwell v. Bradshaw*, 559 F.3d 398, 411

(6th Cir. 2009) (holding petitioner's claim that state court improperly denied him an evidentiary

hearing is not cognizable in habeas corpus proceedings). As noted by the Sixth Circuit in

*Leonard v. Warden*:

> More to the point, in the absence of Supreme Court precedent evaluating the constitutional adequacy of state post-conviction review proceedings, Leonard cannot establish the necessary precondition for issuance of the writ – namely, that the decision of the Ohio Court of Appeals, which clearly evaluated the merits of his claim, 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'

*Leonard*, 846 F.3d at 855.

Because Petitioner's Ninth Claim for Relief is not cognizable in these habeas

proceedings, the Court hereby denies relief on this claim and declines to issue a COA.

### Tenth Claim for Relief:

> The cumulative effects of the errors and omissions presented in this habeas petition constitute constitutional violations that merit relief.

Petitioner sets forth a claim of cumulative error as his Tenth Claim for Relief.

Specifically, Petitioner argues "[p]rosecutorial misconduct, the ineffectiveness of counsel, and

court errors, considered in context with each other, compel the conclusion that the state courts

unreasonably applied federal constitutional principles in determining that Mr. Lindsey's

conviction and death sentence were the result of a fair and reliable process." (Traverse, ECF

No. 20, at PAGEID # 431.) The Warden contends this claim is both procedurally defaulted and

not cognizable in habeas corpus. (Return of Writ, ECF No. 12, at PAGEID # 317.) This Court

52

agrees.

To be sure, "'federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits,'" as it may sometimes be "more economical for the habeas court to simply review the merits of the petitioner's claims." *Cowan v. Huss*, No. 2:19-11917, 2020 WL 6286265, *8 (E.D. Mich. Oct. 27, 2020) (quoting *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)). Generally, cumulative error is not a basis for habeas corpus relief, even in a capital case. *See Webster v. Horton*, 795 F. App'x 322, 327-28 (6th Cir. 2019) ("Webster argued that the trial court's cumulative errors entitled him to habeas relief. As stated by the district court, such claims of cumulated trial errors are not cognizable under § 2254.") *See also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) ("'[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.'") (quoting *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010)); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) ("Finally, Sheppard argues that the cumulative effect of these errors rendered his trial fundamentally unfair. Post-AEDPA, that claim is not cognizable."); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Burnside v. Rewerts*, No. 19-2074, 2020 WL 5592695, *2 (6th Cir. Apr. 29, 2020) (noting that post-AEDPA, a cumulative error claim is not cognizable in a federal habeas petition). Furthermore, even if this claim were cognizable, there is no error to cumulate, as each of Petitioner's claims for relief lack merit, or have been withdrawn by Petitioner.

The Court hereby **DENIES** Petitioner's Tenth Claim for Relief, and because reasonable

jurists would not find this decision debatable or wrong, the Court will not issue a COA.

## IV.    Lethal Injection Claims

As a final matter, it appears Petitioner still has lethal injection claims remaining.   For the past eight years, Petitioner has made multiple attempts to amend his habeas petition to add claims challenging the constitutionality of Ohio's lethal injection method of execution.   On March 8, 2012, Petitioner sought leave to amend his Petition to add claims Eleven and Twelve, in order to assert a challenge to Ohio's lethal injection execution protocol.   (ECF No. 90.)   The Court granted that motion on July 5, 2012 (ECF No. 94), and Petitioner filed his Second Amended Petition adding those two claims on August 3, 2012.   (ECF No. 95.)   On April 20, 2015, Petitioner filed a Third Amended Petition, replacing his two general method-of-execution claims with ten detailed method-of-execution claims that essentially mirrored claims being litigated in a separate 42 U.S.C. § 1983 action captioned *In re: Ohio Execution Protocol Litigation*, Case No. 2:11-cv-1016.   (ECF No. 123.)   No additional amendments were permitted.   This Court last denied Petitioner leave to amend in an Opinion and Order dated September 27, 2018, ECF No. 154, finding amendment would be futile in light of *In re: Campbell*, 874 F.3d 454 (6th Cir. 2017).   *Campbell* held that claims attacking the constitutionality of Ohio's lethal injection protocol were not cognizable in habeas corpus.   *Id*. at 467.   *See also In re Smith*, 806 F. App'x 426 (6th Cir. 2020) (finding "*Campbell* controls" and "is the law of this Circuit"); *Bays v. Warden,* 807 F. App'x 481, 482 (6th Cir. 2020) (discussing the Sixth Circuit's evolving position regarding the proper "procedural vehicle" for lethal injection claims and finding "this court's precedent in *In re Campbell*, 874 F.3d 454 (6th Cir. 2017), forecloses Bay's argument that his lethal injection claims are cognizable in habeas rather

54

than as a claim under 42 U.S.C. § 1983").

To the extent that Petitioner has lethal injection method of execution claims remaining, the Court finds those claims non-cognizable in federal habeas corpus.   The Court hereby **DISMISSES** Petitioner's lethal injection claims, set forth in his Third Amended Petition as claims Eleven through Twenty, and **DENIES** Petitioner a certificate of appealability.

## V.     Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's habeas corpus Petition.   The Court hereby **DISMISSES** this action.   The Court **DENIES** a certificate of appealability on all claims.

**IT IS SO ORDERED.**

  **/s Sarah D. Morrison**
**SARAH D. MORRISON**
**United States District Judge**