## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CARL LINDSEY,

        Petitioner,

    v.

WARDEN, Chillicothe Correctional
  Institution

        Respondent.

Case No. 1:03-cv-702
Judge Sarah D. Morrison
Magistrate Judge Elizabeth P. Deavers

## <u>OPINION AND ORDER</u>

      This capital habeas corpus case is before the Court on Petitioner's Motion to Alter or

Amend the Judgment and Alter or Make Additional Findings and to Reconsider Denial of

COA. (ECF No. 162.) Respondent filed a Memorandum in Opposition (ECF No. 166) and

Petitioner has replied. (ECF No. 170.) Also before the Court is Petitioner's post-judgment

Motion for Leave to Amend his Petition to add five new claims for relief (ECF No. 163.), to

which Respondent filed a Memorandum in Opposition (ECF No. 167) and Petitioner has

replied. (ECF No. 171.)

### I.     Introduction

      After a trial by jury in Brown County, Ohio, Petitioner Carl Lindsey was convicted

and sentenced to death for the murder of Donald Ray "Whitey" Hoop. On October 10, 2003,

and after exhausting his state court remedies, Petitioner filed a Petition for Writ of Habeas

Corpus. On December 30, 2020 and following years of amendments to the Petition as well

as the withdrawal of certain claims, this Court issued an Opinion and Order denying relief

1

on Petitioner's remaining claims and dismissing this action. (ECF No. 159.) Petitioner now moves under Federal Civil Rule 59(e) to alter or amend the judgment. Petitioner contends the Court erred in denying his claims and urges the Court to reconsider the denial of a certificate of appealability as to each of his claims. Petitioner also makes a simultaneous attempt to amend his habeas petition. Specifically, Petitioner seeks leave to file a Fourth Amended Petition to add five new claims for relief, based on what he characterizes as newly discovered evidence. Petitioner proposes to add Grounds Twenty-One and Twenty-Two, arguing that newly discovered evidence indicates he has Fetal Alcohol Syndrome Disorder ("FASD") and he was denied the effective assistance of counsel based on trial counsel's failure to investigate whether Petitioner had FASD "despite the presence of red flags." (ECF No. 163, at PAGEID # 12471.) Petitioner also moves to add Grounds Twenty-Three through Twenty-Five based on "newly developed evidence that Mr. Lindsey's trial, appellate, and post-conviction counsel rendered ineffective assistance by failing to timely communicate multiple plea offers from the Brown County Prosecutor's Office, and that Mr. Lindsey's death sentence is unconstitutional as a result." (*Id.* at PAGEID # 12471-72.) The Court will address Petitioner's motions in turn.

## II. Rule 59(e) Motion, ECF No. 162

Rule 59(e) of the Federal Rules of Civil Procedure "enables a district court to 'rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020) (quoting *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)). The motion is a "one-time effort to bring alleged errors in a just-issued decision to a habeas court's attention, before taking a single appeal." *Id.* at 1710. To grant a

motion filed under Rule 59(e), there must be "'(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). "[A] prisoner may invoke ... [R]ule [59(e)] only to request 'reconsideration of matters properly encompassed in the challenged judgment,'" and "Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Banister*, 140 S.Ct. at 1708 (quoting *White*, 455 U.S. at 451). It is well settled that Rule 59(e) should not be used to "reargue a case on the merits or to reargue issues already presented," *Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008), or to "merely restyle or rehash the initial issues." *Hawkins v. Bruce*, No. 3:20-cv-686, 2021 WL 2677684, *1 (W.D. Ky. June 29, 2021).

In his Rule 59(e) motion, Petitioner asks the Court to alter or amend the judgment with respect to his Second Ground for Relief (*Brady* claim), Sub-claim 2 of his Fourth Ground for Relief (coroner's qualifications as an expert), and his Sixth Ground for Relief (prosecutorial misconduct). (ECF No. 162, at PAGEID # 12367.) Petitioner urges the Court to reconsider the denial of a Certificate of Appealability ("COA") as to his Third Ground for Relief (inconsistent theories of prosecution), certain sub-claims contained within his Seventh Ground for Relief (exclusion of mitigating evidence), and his Ninth Ground for Relief (denial of post-conviction petition without discovery or an expert). (*Id.* at 12368.)

Although a Rule 59(e) motion is not an opportunity to effectively reargue a case, *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008), this is precisely what Petitioner

has done. Petitioner's Rule 59(e) motion comprises One Hundred Four (104) pages and mostly restyles and rehashes arguments set forth in prior briefing. Because it is not the proper function of a Rule 59(e) motion to seek reconsideration of arguments already considered and rejected, this Court will not address every argument Petitioner attempts to reassert.

### A.  Second Ground for Relief: *Brady* Claim

With respect to his Second Ground for Relief, Petitioner argues the Court's judgment embodies a clear error of law, because the Court applied an incorrect, and more stringent standard for assessing the materiality of evidence suppressed in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 162, at PAGEID # 12387.) According to Petitioner, "[t]o satisfy the materiality requirement under *Brady*, a petitioner need only show that "the likelihood of a different result is great enough to undermine confidence in the outcome of the trial.'" (*Id.*) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)). Petitioner argues the Court improperly determined that the undisclosed impeachment evidence was cumulative, erred by conducting a sufficiency of the evidence inquiry by considering the trial record as a whole, and failed to consider the totality of the undisclosed evidence cumulatively. (*Id.* at PAGEID # 12377-95.)

In this Court's prior Opinion and Order, the Court determined that Petitioner's *Brady* claim was entitled to *de novo* review. (ECF No. 159, at PAGEID # 12321-22.) In undertaking that task, the Court carefully considered Petitioner's arguments that the State failed to disclose impeachment material regarding State witness Kathy Kerr. That material included an unsubstantiated allegation that the State paid Kerr for lost wages incurred due

to her testimony and provided Kerr hotel accommodations during the trial. The material also included a letter from the Brown County Prosecuting Attorney addressed to Kerr and advising Kerr that she would have *testimonial* immunity. The letter appears to represent a limited agreement not to use Kerr's truthful *trial testimony* against her in any subsequent proceedings.

In rejecting Petitioner's claim, this Court applied the correct legal standard for determining materiality: evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. (ECF No. 159, at PAGEID # 12322, 12325, 12326) (citing *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). The Court reviewed the entire trial record to determine whether, in the absence of the impeachment material, Petitioner received a fair trial, "understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Although this inquiry necessarily involves a consideration of all relevant evidence, this Court is mindful that it must not "conflate materiality with the sufficiency-of-the-evidence inquiry." *Phillips v. Valentine*, 826 Fed. App'x 447, 460 (6th Cir. 2020) (citing *Kyles*, 514 U.S. at 434-45).

Petitioner faults the Court for considering the complete trial record, including other evidence corroborating Kerr's testimony and linking Petitioner to the crime, as well as defense counsel's thorough cross-examination of Kerr, in making the materiality determination. The undisclosed evidence at issue in this case is impeachment material. In *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *as amended* (Nov. 23, 2011), the Sixth Circuit recognized the need to view the materiality of impeachment material in the context

5

of the entire trial:

> Almost all of the undisclosed information identified by Jalowiec has potential impeachment value; it is not directly exculpatory. Exculpatory evidence is not inherently more valuable, because the *Brady* materiality prong is not a sufficiency-of-the-evidence test, but there are relevant distinctions between impeachment and exculpatory evidence for *Brady* purposes. For instance, "[w]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." *Robinson v. Mills,* 592 F.3d 730, 736 (6th Cir. 2010) (internal quotation marks omitted).

> Defense counsel thoroughly cross-examined several of the prosecution witnesses who are the subjects of *Brady* impeachment evidence in this case. Weaknesses and inconsistencies in the prosecution's case were exposed. The jury was well aware that most of the prosecution witnesses were not model citizens and many were under the influence of intoxicants at the time of the events they testified about. The undisclosed evidence Jalowiec relies on could have been used to further impugn the credibility of some witnesses, but most of the potentially impeaching evidence was of marginal significance. It could hardly have been used to undermine the prosecution's core showing of Jalowiec's guilt.

> The ultimate question is whether there is a reasonable probability that the disclosure of such evidence, cumulatively, would have put the whole case in such a different light as to undermine confidence in the verdict. Evidence withheld by the prosecution "must be evaluated in the context of the entire record." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "If there is no reasonable doubt about guilt whether or not the additional evi[de]nce is considered, there is no justification for a new trial." *Id.* at 112–13, 96 S.Ct. 2392. Because the evidence as a whole reflects that most of the trial witnesses were thoroughly and effectively cross-examined, the undisclosed impeachment evidence would have been of marginal value to Jalowiec. It follows that Jalowiec has failed to establish a reasonable probability that the outcome of the case would have been different, even if all the additional impeachment evidence had been disclosed to the defense.

657 F.3d at 313.

The crux of Petitioner's *Brady* claim involves the purported grant of testimonial

immunity to witness Kerr. Without evidentiary support, Petitioner attempts to characterize the testimonial immunity as a "reward" that "had been held out to [Kerr] in exchange for her cooperation." (ECF No. 162, at PAGEID # 12385-86.) This characterization overstates the nature of any agreement between the prosecution and witness Kerr. Kerr did not receive an obvious benefit from her testimony – there is no evidence that the State agreed not to prosecute Kerr for any involvement in the murder. Rather, the prosecutor agreed not to use her truthful trial testimony against her at any future proceedings. There is a substantial difference between transactional immunity, where an individual is immune from prosecution for a crime, and the testimonial immunity at issue here. Moreover, the Sixth Circuit has instructed that any assessment of the impeachment value of an immunity agreement must consider whether the witness provided self-incriminating testimony. In *Jalowiec*, state's witness Joann Fike testified that she loaned her car, which was subsequently used in a murder, to her nephew who then loaned the car to Jalowiec. 657 F.3d at 309. Fike was granted transactional immunity in exchange for her cooperation with the murder investigation. *Id*. The Sixth Circuit agreed that the impeachment material should have been disclosed to Jalowiec, but determined the evidence was not material for purposes of *Brady*. With respect to the grant of transactional immunity to Fike, the Sixth Circuit held:

> We also find no error in the district court's determination that evidence that Fike was granted transactional immunity in exchange for her cooperation with the investigation of Lally's death was not material for purposes of *Brady.* Again, the grant of immunity should have been disclosed, but inasmuch as Fike did not reveal any self-incriminating information, the impeachment value of the immunity agreement was minimal. *See Marshall v. Hendricks,* 307 F.3d 36, 56 (3d Cir. 2002) (recognizing that "the impeachment value of

the immunity agreement is inextricably tied to the self-incriminating evidence that was provided after the immunity agreement was executed.")

657 F.3d at 309.

Here, as in *Jalowiec*, the value of any purported grant of immunity was minimal, as Kerr did not reveal self-incriminating evidence about the murder. To the extent she admitted to testifying falsely and making prior inconsistent statements, the testimonial immunity at issue did not definitively absolve her from future prosecution.

This Court also determined that Petitioner's trial counsel subjected Kerr to lengthy cross-examination at trial, establishing her history of making conflicting and untruthful statements to both the investigators and the Grand Jury. Although the grant of limited, testimonial immunity should have been disclosed, there is no reasonable probability of a different result had the evidence been disclosed. *Akrawi v. Booker*, 572 F.3d 252, 262-63 (6th Cir. 2009) (disclosure of mutual agreement between witness and prosecution might have made defense counsel's cross-examination "more effective" but "only incrementally so"); *see also Davis v. Gross*, No. 18-5406, 2018 WL 8138536 (6th Cir. Sept. 10. 2018) (no entitlement to relief where petitioner "alleged, at most, that she had been deprived of cumulative impeachment evidence").

Finally, Petitioner contends the Court erred by considering the impeachment material piecemeal, as opposed to cumulatively. In *Kyles*, the Supreme Court cautioned against "dismissing particular items of evidence as immaterial and [] suggesting that cumulative materiality was not the touchstone." 514 U.S. at 440. *See also Hughbanks v. Hudson*, -- F. 4th --, 2021 WL 2521591, *5 (6th Cir. June 21, 2021) ("Importantly, a court

must consider the materiality of withheld evidence . . . only by evaluating the evidence collectively not item by item.") (internal quotations omitted). However, this Court's review and discussion of each of Petitioner's specific allegations of *Brady* material does not equate to piecemeal consideration of the evidence for the purpose of determining materiality. The Court considered the immunity issue, which is consistent with Petitioner's primary focus in his briefing on this aspect of his *Brady* claim. With respect to the allegations concerning the State's payment of lost wages, the Court determined Petitioner failed to point to any evidence of record supporting that unsubstantiated allegation. As the Court noted, allegations that are merely conclusory, or which are purely speculative, cannot support a *Brady* claim. *See Hill v. Mitchell*, 842 F.3d 910, 933 (6th Cir. 2016); *see also Hughbanks*, 2021 WL 2521591, at *5 (discounting certain allegations of *Brady* material where petitioner "has not demonstrated that the police withheld any evidence"). This Court reviewed all of the arguments and evidence offered by Petitioner, and determined then, as it does now, that Petitioner cannot satisfy the materiality component of a successful *Brady* claim. The undisclosed impeachment material, considered cumulatively, does not undermine confidence in Petitioner's trial or sentencing proceeding. The Court's resolution of Petitioner's Second Ground for Relief did not involve a clear error of law, and reasonable jurists would not find the Court's resolution of this claim to be debatable or wrong.

**B.     Sub-Claim 2 of the Fourth Ground for Relief: Coroner's Qualifications**

Petitioner argues this Court erred by concluding he abandoned or withdrew sub-claim 2 of his Fourth Ground for Relief, wherein he asserts a claim of trial court error for overruling objections to the qualifications of the Brown County Coroner, Timothy

McKinley, M.D. (ECF No. 162, at PAGEID # 12397.) In the Traverse, Petitioner stated the allegations concerning the coroner's qualifications were set forth in his Fifth Ground for Relief, which he subsequently withdrew in its entirety. In his merits brief, filed after withdrawing the Fifth Ground for Relief, Petitioner did not address sub-claim 2 of his Fourth Ground for Relief. Petitioner now argues he never withdrew or abandoned the sub-claim, and this Court erred by failing to consider it. (*Id.*)

Respondent argues this Court correctly determined that Petitioner withdrew sub-claim 2, because Petitioner withdrew his Fifth Ground for Relief containing the factual basis for the sub-claim, and also in light of Petitioner's failure to reference the sub-claim in his merits briefing. (ECF No. 166, at PAGEID # 12594.) Alternatively, Respondent argues the sub-claim is defaulted, because Petitioner did not present this claim of trial court error regarding the coroner's qualifications on direct appeal. (*Id.*) Even if the claim is not defaulted, Respondent argues, it is "patently meritless" because "[a] state court's evidentiary ruling warrants federal habeas relief only where the ruling 'renders the proceedings so fundamentally unfair as to deprive the petitioner of due process.'" (*Id.*) (*citing Broom v. Mitchell*, 441 F.3d 392, 406 (6th Cir. 2006)).

In his Reply, Petitioner argues this claim of trial court error for overruling objections to Dr. McKinley's qualifications is not defaulted. According to Petitioner, this claim was properly raised during his state post-conviction proceedings and supported with evidence *de hors* the record, in the form of transcripts of Dr. McKinley's testimony at the subsequent trial of Petitioner's co-defendant, Joy Hoop. As support for this argument, Petitioner directs the Court's attention to three paragraphs of his post-conviction petition,

10

wherein Dr. McKinley's qualifications are discussed. (ECF No. 170, at PAGEID # 12625.)

Initially, a claim of trial court error for overruling a defense objection to the qualifications of an expert witness seems to be a claim appearing on the face of the trial record that should have been raised on direct appeal. The propriety of a trial court's evidentiary ruling is best judged in view of the evidence before the trial court at the time the decision was made, not by supplementing the objection after the fact with argument and evidence not raised during the trial. However, assuming such a claim could ever be supported with evidence outside the trial record, this Court cannot conclude that Petitioner actually raised a claim of trial court error regarding the coroner's qualifications during his post-conviction proceedings. This Court has reviewed the quoted paragraphs from Petitioner's post-conviction petition and notes that those paragraphs are contained as part of the introductory paragraphs setting forth the Statement of Facts. (ECF No. 152-8, at PAGEID # 7141-43, 7171). More specifically, the quoted paragraphs are set forth in Section II(B)(2)(b) of the Statement of Facts and are part of the factual summation supporting Petitioner's separate claim of inconsistent theories of prosecution. The paragraphs Petitioner cites are not part of any claims of trial court error, and certainly are not contained within a freestanding claim challenging the trial court's handling of objections to the coroner's qualifications.

It is well settled that for a claim to be properly presented, both the factual and legal basis of the claim must be presented to the state court. *See Nian v. Warden*, *N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) ("Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim.") (*citing*

11

*Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004). *See also McClain v. Kelly*, 631 F. App'x 422, 439 (6th Cir. 2015) ("To constitute fair presentation, the state courts must have had 'a fair opportunity to apply controlling legal principles to the facts bearing upon the petitioner's constitutional claim,' and it is not sufficient merely 'that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'") (*quoting Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Here, Petitioner did not fairly present his claim regarding the qualifications of the coroner to the state courts as a claim of trial court error.

In sum, further review of sub-claim 2 of Petitioner's Fourth Ground for Relief and the state court record reveals that the claim, even if not abandoned, is not properly before the Court for a consideration on the merits because it was not fairly presented to the state courts and is procedurally defaulted.

Reasonable jurists would not debate whether the Court's procedural ruling is correct. Therefore, the Court declines to issue a certificate of appealability as to sub-claim 2 of Petitioner's Fourth Ground for Relief.

### C. Sixth Ground for Relief: Prosecutorial Misconduct

With respect to his Sixth Ground for Relief, Petitioner argues this Court committed a clear error of law by failing to set forth controlling legal principles applicable to claims of prosecutorial misconduct, and by failing to consider the cumulative effect of his allegations of misconduct. According to Petitioner, "[t]he Court's decision should be altered and

12

amended to remedy this error and to prevent a manifest injustice for failing to meaningfully and cumulatively consider the prosecutor's misconduct in the context of the entire trial." (ECF No. 162, at PAGEID # 12405.)

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is quite narrow. Prosecutorial misconduct forms the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair, based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). Here, the allegations underlying Petitioner's guilt phase prosecutorial misconduct claim directly correspond to the *Brady* claim set forth in his Second Ground for Relief, and the inconsistent theories of prosecution claim set forth in his Third Ground for Relief. The Court considered and rejected those underlying claims, and subsequently determined that because Petitioner failed to establish any underlying constitutional error, his prosecutorial misconduct claim also lacked merit. Petitioner received a fair trial. Each instance of alleged misconduct was either meritless or harmless, and the allegations standing alone or considered together fail to satisfy the stringent requirements for a successful prosecutorial misconduct claim on habeas review. Petitioner has failed to demonstrate that prosecutorial misconduct was "so pronounced and persistent that it permeated[d] the entire atmosphere of the trial." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Further, the Court finds Petitioner's argument that the Court failed to set forth prevailing legal principles to be disingenuous. The Court considered Petitioner's allegations of guilt phase and penalty phase misconduct within the same section of the Opinion and Order, and cited *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974), *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), and

13

*Lamar v. Houk*, 798 F.3d 405 (6th Cir. 2015). (ECF No. 159, at PAGEID # 12349.)

Finally, Petitioner attempts to offer cause to excuse the default of several claims of penalty phase prosecutorial misconduct. In the context of Rule 59(e), "Courts will not entertain arguments that could have been but were not raised before the just-issued decision." *Banister v. Davis*, 140 S.Ct 1698, 1702 (2020). *See also McFarlane v. Warden*, No. 2:18-cv-1377, 2019 WL 3501531, *1 (S.D. Oh. Aug. 1, 2019) ("Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment."). Nevertheless, this Court previously conducted an alternative merits review of the defaulted claims, determining the claims also lacked merit. Petitioner's Rule 59(e) motion as it relates to his Sixth Ground for Relief is denied.

### D.  Denial of Certificate of Appealability

Finally, Petitioner argues the Court should reconsider the denial of a certificate of appealability as to his Third, Seventh, and Ninth Grounds for Relief, as well as his lethal injection claims. This Court is not persuaded. "[T]he standards for a certificate are no mere technicality," and a district court shall not grant a COA "unless every independent reason to deny the claim is reasonably debatable." *Moody v. United States*, 958 F.3d 485, 493 (6th Cir. 2020). Because the Court is of the opinion that there is no substantial reason to think the denial of relief is incorrect, the Court again concludes Petitioner has not met the standard for granting a COA as to any of his claims.

### III. Post-Judgment Motion to File a Fourth Amended Petition

Despite the entry of final judgment in this matter, Petitioner filed a motion for leave to file a Fourth Amended Petition to assert five new claims for relief.

Typically, a motion to amend a habeas corpus petition is, per 28 U.S.C. § 2242, subject to the same standards which apply generally to motions to amend under Fed. R. Civ. P. 15(a). The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc., – the leave sought should, as the rules require, be "freely given."

371 U.S. at 182; *see also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997) (citing *Foman* standard). A motion to amend filed after final judgment has been entered, however, is not typical.

A post-judgment motion to amend the petition is not considered a second or successive habeas petition "if the district court has not lost jurisdiction of the original habeas petition to the court of appeals, and there is still time to appeal." *Moreland v. Robinson*, 813 F.3d 315, 324 (6th Cir. 2016). In *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010), the Sixth Circuit set forth the procedure for considering motions to amend filed after the entry of final judgment. The Sixth Circuit concluded that a party "must shoulder a heavier burden" to amend after an adverse judgment, and rather than "meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Id.* The Sixth Court explained:

> Rule 15 requests to amend the complaint are frequently filed and, generally speaking, freely allowed. But when a Rule 15 motion comes after a judgment against the plaintiff, that is a different story. Courts in that setting must consider the competing interest of protecting the finality of judgments and the expeditious termination of litigation. If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision. That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities.

*Id.* at 615-16. *See also Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (quoting *Leisure Caviar*). The Sixth Circuit concluded that when faced with a post-judgment motion to amend, the Rule 15 and Rule 59 inquiries must turn on the same factors, and if a petitioner cannot meet the requirements of Rule 59 to reopen the judgment, the petitioner cannot amend the petition. *Id.* Of the "heavier burden" applicable to requests to amend after an adverse judgment, the Sixth Circuit instructed:

> In addition to the *Foman* factors of undue delay, bad faith, dilatory motive, undue prejudice, and the futility of the proposed amendment, post-judgment requests to amend require that the district court 'also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation. This latter inquiry includes asking whether the claimant has made a 'compelling explanation' for failing to seek leave to amend prior to the entry of judgment.

*Pond v. Haas*, 674 F. App'x 466, 473 (6th Cir. 2016) (quoting *Leisure Caviar*, 616 F.3d at 617) (internal citations omitted).

Petitioner cites the recent Supreme Court decision in *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020), for the proposition that the mere *filing* of the Rule 59(e) motion places the case in a pre-judgment posture so the Court should apply the more lenient Rule 15 standards to allow his amendment. (ECF No. 163, at PAGEID #12472.) He argues the Sixth

16

Circuit case law requiring a more stringent standard for post-judgment motions to amend pre-dates *Banister*, but he concedes "a district court judge recently favorably cited to *Leisure Caviar, LLC* for the proposition that if moving to amend after judgment, the petitioner must meet the higher Rule 59(e) standards." (*Id*. at PAGEID #12474) (citing *Epps v. Lindner*, No. 1:19cv968, 2020 WL 7585605, *3 (S.D. Ohio Dec. 22, 2020)).

Petitioner's argument is unpersuasive. *Banister*, a habeas case, addressed whether a Rule 59(e) motion constituted a second or successive habeas petition subject to the strictures of 28 U.S.C. § 2244(b). 140 S.Ct. at 1702. In finding that the Rule 59(e) motion was not a second or successive petition, *Banister* did not address post-judgment motions to amend a habeas petition, and did nothing to broaden the scope of matters to be considered in a Rule 59(e) motion, noting:

> [A] petitioner may invoke the rule only to request reconsideration of matters properly encompassed in the challenged judgment. *White*, 455 U.S. at 451. And "reconsideration" means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision.

*Id*. at 1702. Because *Banister* did not concern a post-judgment motion to amend, the *Leisure Caviar* standard applying a "heavier burden" is still binding on this Court. *See Johnston v. Dir. Bureau of Prisons*, No. 20-5659 (6th Cir. Dec. 11, 2020) (citing *Leisure Caviar*, after *Banister*, and noting that "a party seeking to amend after the judgment faces a heavier burden and must meet the requirements for reopening a case established by Federal Rule of Civil Procedure 59 or 60") (internal quotations omitted).

## A.    Claims Pertaining to Fetal Alcohol Syndrome Disorder

Petitioner seeks to add the following two claims regarding his late diagnosis of

FASD:

> Twenty-First Ground for Relief: Ineffective assistance of counsel for failure to investigate and present evidence of Lindsey's FASD.

> Twenty-Second Ground for Relief: Allowing the death penalty for people with FASD violates the prohibition against cruel and unusual punishment and the equal protection clause.

(ECF No. 163-1, at PAGEID # 12494.) With respect to his claim of ineffective assistance of trial counsel, Petitioner argues that trial counsel performed deficiently because the diagnostic criteria for FASD was well established in 1997, yet counsel "failed to investigate or obtain an evaluation for FASD, despite the fact that Lindsey's mother abused alcohol during her pregnancies, including her pregnancy with Lindsey." (*Id.* at PAGEID # 12496.) Petitioner also cites certain "facial characteristics" which he argues are "clear markers for FASD." (ECF No. 163-1, at PAGEID # 12497.) According to Petitioner, "[d]ue to ineffective assistance of trial and post-conviction counsel, as well as the trial court's denial of expert funding during post-conviction proceedings, Mr. Lindsey did not previously possess the evidence supporting the new claims he seeks to amend into his petition." (ECF No. 163, at PAGEID # 12475.) To satisfy the prejudice element of his ineffective assistance claim, Petitioner points to newly discovered evidence obtained after an evaluation by Dr. Julian Davies, MD. Dr. Davies prepared a report on September 22, 2020, opining that Petitioner suffers FASD:

> Medical Opinion

> It is my opinion to a reasonable degree of medical certainty that Mr. Lindsey has Sentinel Physical Findings / Neurobehavioral Disorder / Alcohol Exposed using the University of Washington 4-Digit Code criteria, which is a Fetal Alcohol Spectrum Disorder. This describes a pattern of physical features and

> brain dysfunction associated with prenatal alcohol exposure. This disorder was likely compounded by severe childhood adversity and early-onset substance abuse.
>
> Mr. Lindsey is also very close to the Centers for Disease Control Definition of Fetal Alcohol Syndrome (FAS): he meets the CDC criteria for facial features, brain impairments, and alcohol exposure, but we lack historical growth measurements that might demonstrate low weight and/or height.

(ECF No. 163-2, at PAGEID # 12529.) In diagnosing Petitioner with a FASD, Dr. Davis notes that Petitioner does not have a CDC diagnosis of Fetal Alcohol Syndrome, but "is close." (*Id.* at PAGEID # 12549.)

Petitioner argues that leave to amend is warranted here as he "diligently filed his claims in state court based on newly discovered evidence." (ECF No. 163, at PAGEID #12488.) Petitioner notes that state court counsel for Petitioner filed a post-conviction petition on July 22, 2020, seeking to raise the new claims. (ECF No. 163, at PAGEID # 12489) (referencing *State v. Lindsey*, Nos. 1997-2015, 1997-2064 (Brown Cty. Ct. Com. Pl.)). Petitioner contends that "[g]iven the Court's December 30, 2020 decision, it is clear counsel should have worked faster, but they have not engaged in dilatory tactics or in bad faith for failing to do so." (*Id.* at PAGEID # 12489.)

The Court finds that Petitioner has not established that he could not have reasonably raised the new claims pertaining to FASD prior to this Court's entry of final judgment. Petitioner argues that in 1997, his trial counsel were constitutionally deficient for failing to identify FASD as an issue in his case. What is missing is why it took over twenty years to explore this claim. "A claim belatedly pursued is not newly discovered," *United States v. Seago*, 930 F.2d 482, 490 (6th Cir. 1991), and here, Petitioner has not

established that this claim could not have been discovered sooner through the exercise of due diligence. Habeas counsel have been "on notice" of the same information Petitioner faults trial counsel for not investigating. The fact that Petitioner's mother drank excessively during her pregnancies was documented as far back as 1997-1998, during Petitioner's trial and post-conviction proceedings. The state court record filed in this case contains the September 17, 1998, Affidavit of Dr. Sharon Pearson, PSY.D. Dr. Pearson's Affidavit referenced the fact that Petitioner's mother "reportedly drank heavily during all of her pregnancies." (ECF No. 152-8, at PAGEID # 7547.) Paragraph 44 states:

> Conclusion: The one consistent factor in Mr. Lindsey's life has been alcohol and substances of abuse, from his grandparents' and his parents' alcoholism, *his mothers' heavy drinking during her pregnancies and the probable resulting birth defects in her children*, to his own, rapid development of addiction problems, to his dichotomous "good guy-bad guy" behavior based on his chemical use, the significant use of alcohol and drugs by his siblings and his wife. All of his significant or primary relationships have been tainted by the effects of alcohol and/or drugs.

(ECF No. 152-8, at PAGEID # 7556.) Although Petitioner's diagnosis of FASD was not known until his recent evaluation by Dr. Davis, the circumstances suggesting this as a potential claim have been knowable since at least the time of Petitioner's trial and post-conviction proceedings. Petitioner offers no compelling basis for adding the claims at this stage of the proceedings, after final judgment has been entered.

### B.     Claims regarding plea offers

Petitioner seeks leave to add the following three claims regarding the State's purported plea offers:

> Twenty-Third Ground for Relief: Appellate counsel rendered ineffective assistance by failing to communicate a plea offer in violation of the Fifth,

Sixth, Eighth and Fourteenth Amendments.

Twenty-Fourth Ground for Relief: Lindsey's death sentence violates the Constitution under the Sixth, Eighth, and Fourteenth Amendments because the prosecution pursued the death penalty after independently determining that a life-sentence was appropriate.

Twenty-Fifth Ground for Relief: Lindsey was denied effective assistance of counsel for trial counsel's failure to object to the withdrawal of the plea offers.

(ECF No. 163-1, at PAGEID # 12513-25.) The gist of Petitioner's claims is that the Brown County Prosecutor made certain plea offers and then withdrew those offers before Petitioner was able to accept. According to Petitioner, Thomas Grennan, the Brown County Prosecutor at the time of trial, sought to offer Petitioner a sentence less than death on "multiple occasions." (ECF No. 163, at PAGEID # 12483.) Petitioner argues he "decided to accept" but "by the time this was communicated to Prosecutor Grennan – just a few days later – the deal was off the table." (*Id.*) Petitioner asserts that his appellate and post-conviction counsel also performed unreasonably by failing to communicate an additional plea offer after his trial and sentencing. According to Petitioner, "Prosecutor Grennan made this offer to appellate counsel following Mr. Lindsey's trial but prior to the trial of his co-defendant, Joy Hoop. Mr. Lindsey's counsel in his post-conviction proceedings, which were pending at the time, were also aware of the offer." (*Id.* at PAGEID # 12483-84.)

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner states his new claims regarding the plea offers "were not raised or litigated in his initial habeas petition or subsequent amended petitions because post-conviction counsel remained as lead counsel throughout his habeas proceedings and suffered a conflict of interest regarding their own ineffectiveness." (ECF No. 171, at PAGEID # 12654.) According to Petitioner:

> Mr. Lindsey raises claims based on newly discovered evidence uncovered during the course of a comprehensive investigation once the Federal Public Defender's Office became lead counsel. The new claims also could not have been raised until prior counsel withdrew as lead counsel due to their ongoing conflict of interest in raising their own ineffectiveness. Mr. Lindsey thoroughly investigated the case, consulted with the necessary experts, and then timely filed a post-conviction petition in state court in order to exhaust the claims and evidence.

(*Id.* at PAGEID # 12654.) The Court finds Petitioner's arguments unpersuasive.

First, Petitioner makes conclusory statements that his plea agreement claims could not have been raised previously because post-conviction counsel could not have been expected to raise their own ineffectiveness, but he does not provide details or evidence to support this position. Specifically, Petitioner does not identify the attorneys who represented him in both post-conviction and habeas. It appears that Attorney Laney Hawkins served as lead counsel for Petitioner during his post-conviction proceedings. (ECF No. 163-7, at PAGEID # 12567.) Attorney Hawkins worked as an Assistant Ohio Public Defender from May 1997 until approximately April 2001. (*Id.*) A review of the Court's docket in this matter establishes that Petitioner has been represented by several attorneys in this habeas proceeding. On September 29, 2003, and while this case was in its infancy, Attorneys Siobhan Clovis and Wendi Dotson, both of the Ohio Public Defender's Office, filed a motion to be appointed as counsel for Petitioner. (ECF No. 4.) Assistant State Public Defender Dotson indicated that she had represented Petitioner during a portion of his state court post-conviction proceedings. (*Id.* at PAGEID # 66.) On March 9, 2004, Assistant Ohio Public Defender Pamela Prude-Smithers replaced Attorney Clovis as lead counsel. (ECF No. 24.) On October 5, 2005, Petitioner filed a motion to substitute Melissa J. Callais for

22

Attorney Wendi Dotson, the attorney who had previously assisted Petitioner during his post-conviction proceedings, because Attorney Dotson was no longer employed by the Office of the Ohio Public Defender. (ECF No. 49.)

On September 30, 2008, Petitioner filed a motion to appoint the Federal Public Defender for the Southern District of Ohio as co-counsel, based on Attorney Callais's new employment as an Assistant Public Defender in the Capital Habeas Unit of the Federal Public Defender's Office. (ECF No. 82.) On October 12, 2012, Attorney Carol Wright, a then Assistant Federal Public Defender for the Southern District of Ohio, took over the role as co-counsel for Petitioner. (ECF No. 99.) Finally, on June 13, 2015, Attorney Wright and the Office of the Federal Public Defender, filed a "Notice of Substitution of Lead Counsel," that Attorney Wright replaced Attorney Prude-Smithers as lead counsel. This substitution concluded the Ohio Public Defender's representation of Petitioner. (ECF No. 126.)

In short, although the Office of the Ohio Public Defender represented Petitioner in both his state court post-conviction proceedings and the instant habeas action, the docket reflects that going back to 2007, the Office of the Federal Public Defender assisted the Ohio Public Defender in representing Petitioner. At minimum, counsel could have filed for leave to amend any time after June 3, 2015, when the Office of the Federal Public Defender assumed sole responsibility for representing Petitioner in these habeas proceedings. After that effective date, Petitioner sought leave to amend his petition three times, yet never sought to add claims challenging the circumstances of the withdrawn plea offers or claims pertaining to FASD. (ECF No. 131, 135, 144.) Petitioner has made no attempt to explain why he did not seek to amend his petition to add these claims in the more than five years since

the Ohio Public Defender's Office concluded their representation.

For the foregoing reasons, the Court **DENIES** Petitioner's motion to file a Fourth Amended Petition, post-judgment. As discussed in the prior section of this Opinion and Order, Petitioner has not met the Rule 59(e) requirements for reopening his case, with the exception of the Court's limited reconsideration of one sub-claim that was deemed abandoned by the Court, and which is ultimately procedurally defaulted. Petitioner has not demonstrated the existence of newly discovered evidence that was not previously available and has not offered a compelling justification for the delay in seeking leave to amend.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's motion to alter or amend the judgment, ECF No. 162. The Court **GRANTS** Petitioner's motion as it relates to sub-claim 2 of Petitioner's Fourth Ground for Relief for the limited purpose of determining that sub-claim 2 is procedurally defaulted and not properly before the Court for a consideration on the merits. The Court **DENIES** Petitioner's Motion to Alter or Amend the Judgment as to all other grounds and the denial of a certificate of appealability. Furthermore, the Court **DENIES** Petitioner's motion to file a Fourth Amended Petition, ECF No. 163.

**IT IS SO ORDERED.**

  /s/ Sarah D. Morrison
**SARAH D. MORRISON**
**United States District Judge**

24